**STATE of Missouri, Respondent,**

v.

**Lawrence A. CLOUSE, Appellant.**

**Nos. WD 50411, WD 53865.**

Missouri Court of Appeals,
Western District.

March 17, 1998.

Ellen H. Flottman, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ann R. Littell, Asst. Atty. Gen., Jefferson City, for Respondent.

HANNA, Judge.

The defendant, Lawrence Clouse, was convicted of murder in the first degree, § 565.020.1, RSMo 1994, and of armed criminal action, § 571.015, RSMo 1994, in the circuit court of Clay County. Following a penalty phase, the jury returned a verdict recommending life imprisonment without the possibility of parole. The trial court sentenced the defendant in accordance with the jury verdict. Subsequently, the defendant filed a Rule 29.15 motion for post-conviction relief, claiming ineffective assistance of counsel. The motion court held an evidentiary hearing and entered findings of fact and conclusions of law denying the defendant's Rule 29.15 motion.

The defendant claims, on appeal, that the trial court erred in refusing to strike a venireperson for cause because she had formed an opinion based on pre-trial publicity. The defendant also claims that the motion court erred in denying his Rule 29.15 motion because his trial counsel was ineffective in that he failed to request a change of venue despite the extensive pre-trial publicity.

Since sufficiency of the evidence is not an issue, the abbreviated underlying facts are as follows. The defendant and his wife separated in May 1993. Their 11–year–old daughter went to live with her mother and their 15–year–old son, Derek, went to live with the defendant. On August 10, 1993, the mother obtained an order to restrict the defendant's visitation with their daughter. In the hallway after the hearing, the defendant told his wife that because she took away his daughter, she wouldn't live through this. After the court hearing, the defendant and his son discussed killing Mrs. Clouse. The defendant told his son that if he killed his mother, nothing would happen to him except a sentence of a year in juvenile detention, and that they would receive life insurance moneys which they could use to buy a camper and travel. The day before the killing, they practiced firing the defendant's .22 caliber revolver and then, the afternoon before, his son practiced walking around with a gun in his pants so that he wouldn't walk "funny."

The son went with his mother to see a movie. Just after the lights went down, he stood up and shot his mother seven times in the head. His mother died from the gunshot wounds. The son was arrested and taken to the juvenile justice center. The defendant visited his son that evening, with a "big smile on his face," and told him that he was proud of him, and not to implicate him in the murder.[1] At the defendant's trial, the son testified against his father. The jury found the defendant guilty of murder in the first degree and armed criminal action.

In the defendant's first point on appeal, he contends that the trial court erred in overruling his challenge for cause of venireperson

---

1. The son was certified to be tried as an adult, entered a guilty plea to second degree murder in accordance with a plea agreement, and was sentenced to life imprisonment. See Derek Clouse v. State, 958 S.W.2d 322 (Mo.App.1998).

Marlene Gordon. During voir dire examination, the defendant's attorney asked how many of the veniremembers had heard, through media sources, that Derek Clouse had shot his mother in a theater, and whether or not they believed, or had a "predisposition" to believe, that Derek Clouse had done it. He also asked if they had heard that the defendant was implicated in the shooting. When the defendant's attorney reached Ms. Gordon, she indicated that she had heard and read about the case and stated that:

> A: I believed the boy had done it. And I do remember reading quite a lengthy article in the paper when the father was implicated. Yes, I kind of formed an opinion from what I read in the paper.

The defendant's attorney then asked some individual questions of the veniremembers as to how they would vote, regarding the defendant's guilt, if they had to vote at that point. When he asked Ms. Gordon how she would vote, she responded, "Guilty." He did not ask her, as he did with many of the other venire, as to whether she could serve as an impartial and fair juror. When he asked if there was anyone who thought that they could not be fair and impartial, none of the veniremembers responded.

The prosecutor then asked rehabilitation questions of the individual veniremembers. His exchange with Ms. Gordon indicated that she had said that she would vote guilty only based on her knowledge at that point, which was limited to what she had read in the newspaper. She then indicated that she would make any courtroom decision based on the evidence presented and the court's instructions. The state's attorney and Ms. Gordon's dialogue was as follows:

> Q: You said if you voted right now, you'd vote guilty?
>
> A: Yes, I said that.
>
> Q: Now how does that square with only deciding the case on what happens in the courtroom?
>
> A: The way that the question was put to me, could you vote guilty or not guilty, and that's not a fair question.

> Q: I want to ask you the easiest way possible to try to really find out what's roaming around in your head. Okay. If the Judge instructed you that the law was you had to presume all citizens on trial as innocent and that the State has to convince you by admissible evidence that he did what we said he did, only then could you find him guilty. Do you understand that?
>
> A: Yes.
>
> Q: And the Judge gave you that instruction of law that when you go back into the jury room, you'd have to presume him to be innocent unless and until we could convince you beyond a reasonable doubt that he did what we said he did. Okay?
>
> A: Yes.
>
> Q: And if the Judge gave you those instructions, could you follow those instructions and start out your consideration presuming him to be innocent?
>
> A: Yes.
>
> Q: The question you thought was would you vote guilty based on what you read in the newspaper, right?
>
> A: Yes.
>
> Q: But previously you promised us that you would make any decisions in the courtroom only on the testimony that you hear here and the testimony and evidence that might be introduced. Can you do that?
>
> A: Yes.
>
> Q: Can you follow the Court's instructions?
>
> A: Yes.
>
> Q: Thank you.

The defendant's attorney then asked three of the venire, including Ms. Gordon, whether or not they could be fair and impartial, while knowing that they "have a predisposition toward guilty," based on the fact that they previously expressed that they would vote guilty if required to vote at that time. The defendant's attorney's follow-up exchange with Ms. Gordon was as follows:

> Q: There were three people, Henry, Blair and Gordon, who, when I asked the question if you had to vote right now,

you said you'd vote guilty. The question now is having heard everything [the prosecutor] said, having heard my question, and knowing that you have a predisposition toward guilty, do you think that you could be fair and impartial in this trial? ... Then, Gordon, Miss Gordon, yes. Same question for you. Having heard everything, can you be a fair and impartial juror in this trial?

A: Yes.

Q: How would you do that?

A: My predisposition was about what I read in the newspaper and seen on TV. So I wouldn't want—I would want the State to prove to me now that what I saw and what I read was not true and this man was innocent.

A: Thank you, ma'am.

■ Defense counsel attempted to strike Ms. Gordon for cause. The state objected and the trial court denied defendant's request, indicating that although Ms. Gordon initially said she would vote guilty, it was clear to the court in follow-up questioning that such vote would only be based on what she had read in the paper. The court observed that she "did very solidly say that [she] could follow the instructions and ... be fair and presume the Defendant innocent." The defendant utilized a peremptory strike to remove Ms. Gordon from the panel.

The state contends that the defendant cannot challenge the trial court's decision on appeal because Ms. Gordon ultimately did not serve on the jury. As such, the defendant's claim is precluded by § 494.480.4, RSMo 1994, which states that:

The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for ... the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and partic-

ipated in the verdict rendered against the defendant.

In response to this argument, the defendant contends that § 494.480.4 is unconstitutional in that it allows the legislature to exercise a power properly belonging to the judiciary. The defendant recognizes, however, that this argument has been rejected by Missouri courts. *See State v. Whitfield,* 939 S.W.2d 361, 366 (Mo. banc 1997), *cert. denied, Whitfield v. Missouri,* —— U.S. ——, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997). Thus, the defendant raises the issue only for purposes of federal preservation. The result is that the defendant may not challenge, on appeal, the qualifications of Ms. Gordon to be a juror since she did not serve on his jury. *See* § 494.480.4, RSMo 1994; *State v. Richardson,* 923 S.W.2d 301, 310 (Mo. banc 1996), *cert. denied, Richardson v. Missouri,* —— U.S. ——, 117 S.Ct. 403, 136 L.Ed.2d 317 (1996).

■ Furthermore, regardless of the bar of § 494.480.4, we find that the trial court did not abuse its discretion in failing to strike Ms. Gordon from the panel for cause. Ms. Gordon's "predisposition to vote guilty," as characterized by defendant's attorney, was based on her response to the question as to how she would vote on what she had learned from the media. She was clear in expressing her ability to evaluate the evidence fairly and impartially based only on the court's instructions and the evidence. As set forth above, Ms. Gordon responded affirmatively, several times, that she would be able to set aside her previously formed opinions, presume that the defendant was innocent unless proven guilty, and base her courtroom decisions only on the testimony and evidence introduced at trial.[2]

■ The trial court has "broad discretion" in determining juror qualifications as they are in a better position to evaluate the veniremember's responses. *See State v. Feltrop,* 803 S.W.2d 1, 7 (Mo. banc 1991).

**2.** Ms. Gordon's remark regarding the state's burden of proof (that the *state* had to prove that what she had previously learned from the media—that the defendant had been implicated in the crime—was not true and that the defendant was innocent) was either the result of confusion or a misstatement. As such, the remark does not

demonstrate a predisposition to prejudge the defendant. Regardless, the remark is not indicative of either Ms. Gordon's ability to follow the jury instructions, nor is it representative of her competence to act as a fair and impartial juror, particularly in light of her straightforward responses regarding these qualifications.

"[V]enirepersons are not automatically excluded for cause because they may have formed an opinion based on publicity." *Id.* (citations omitted). In light of the trial court's broad discretion and because Ms. Gordon "unequivocally indicated [her] ability to evaluate the evidence fairly and impartially," *id.* (citations omitted), we find that the trial court did not clearly err.

Since Ms. Gordon did not serve on the defendant's jury, an appeal cannot be based on the ground that she was an unqualified juror pursuant to the bar of § 494.480.4, RSMo 1994. Regardless, the trial court did not err in failing to strike her for cause because she was unequivocal in expressing her ability to set aside her pre-trial opinion and be a fair and impartial juror by following the court's instructions. Point one is denied.

■ The defendant's second point on appeal is that the motion court erred in denying his Rule 29.15 motion because he received ineffective assistance of counsel at trial. The defendant claims that his trial counsel failed to request a change of venue, despite his request to his trial counsel to ask for a change of venue due to the extensive pretrial publicity. He claims that the result was prejudicial in that several members of the jury had heard of the case and formed opinions prior to the trial, the effect being that defense counsel was compelled to remove at least one venireperson from the panel with a peremptory challenge.

In reviewing a motion court's decision to deny a Rule 29.15 motion, we are limited to a determination of whether the motion court's findings of fact and conclusions of law were "clearly erroneous." Rule 29.15(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984); *Hamilton v. State*, 865 S.W.2d 374, 375 (Mo. App.1993) (citations omitted). The findings of fact and conclusions of law are clearly erroneous if we are left with a definite and firm impression that a mistake was made. *See State v. White*, 798 S.W.2d 694, 697 (Mo. banc 1990)(citing *Day v. State*, 770 S.W.2d 692, 695–96 (Mo. banc 1989)). The defendant, as the party contesting the motion court's decision, bears the burden of proving clear error by a preponderance of the evi-

dence. Rule 29.15(h); *See Antwine v. State*, 791 S.W.2d 403, 406 (Mo. banc 1990).

An ineffective assistance of counsel claim is subject to a two-prong test: (1) that counsel "failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances," and (2) that the defendant was prejudiced by the ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 688–90, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987) (citations omitted).

The defendant's trial counsel testified that he discussed the possibility of a change of venue with the defendant. He testified that, in his opinion, he believed that a change of venue "would have been very devastating." His research included consulting other attorneys and a systematic search of counties of a similar size as Clay County to determine the venue to which the Supreme Court could transfer the case. His investigation indicated that the two possible judges that were receiving death penalty cases were in rural counties where a jury would "have no problem" believing the incriminating testimony of the defendant's son. The defendant's trial counsel further testified that he discussed this decision of trial strategy with the defendant and that the defendant agreed with the decision.

Following the evidentiary hearing, the motion court found that trial counsel was effective because the "decision to keep the trial in Clay County, Missouri was within the broad spectrum of a reasonably competent attorney." The motion court also found that "[t]his Court believes the testimony of [trial counsel] and does not believe the testimony of [the defendant], about discussing the change of venue for the trial." "In determining the issue of ineffective assistance of counsel, the trial court is free to believe or disbelieve evidence—contradicted or undisputed." *Sanders*, 738 S.W.2d at 857 (citations omitted).

■ The defendant must show that the acts or omissions fell outside the range of professionally competent assistance, and must overcome the presumption that the "challenged acts or omissions were sound

trial strategy." *State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993) (citations omitted). Trial strategy decisions made after thorough investigation are "virtually unchallengeable" on appellate review. *See State v. Twenter,* 818 S.W.2d 628, 635 (Mo. banc 1991). The motion court did not clearly err in determining that defendant's trial counsel was competent in that his decision not to ask for a change of venue was reasonable trial strategy, and that such decision was agreed to by the defendant. Point two is denied.

Judgments of conviction and denial of the Rule 29.15 motion are affirmed.

LAURA DENVIR STITH, P.J., and RIEDERER, J., concur.