STATE of Missouri, Respondent,

v.

Stefan Koda WILLIAMS, Appellant.

No. WD 56507.

Missouri Court of Appeals,
Western District.

Nov. 16, 1999.

As Modified Dec. 21, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 21, 1999.

Application for Transfer Denied
Jan. 25, 2000.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before: ULRICH, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Stefan Koda Williams appeals the judgment of his jury conviction in the Circuit Court of Boone County for trafficking in the second degree, § 195.223,[1] for which he was sentenced to eighteen years imprisonment in the Missouri Department of Corrections.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in denying his oral motion at trial to dismiss and replace his trial counsel because he did not receive effective assistance of counsel, as guaranteed by the Constitutions of the United States and Missouri, in that an irreconcilable conflict arose between himself and his trial counsel, resulting in a complete breakdown of communication between them. In Point II, he claims that the trial court erred in overruling his pretrial motion to suppress and admitting certain evidence at trial resulting from an alleged illegal search warrant because its issuance was not supported by probable cause in that the supporting affidavit: (1) was based on hearsay which was uncorroborated or provided by an informant who was not known to the affiant as being reliable; and (2) did not provide current and relevant information to demonstrate a fair probability that crack cocaine would be found at the appellant's residence.

We affirm.

### Facts

On January 20, 1998, the Columbia Police Department received an anonymous CrimeStoppers tip that the appellant was selling cocaine at 2621 Quail Drive, Apt. C, in Columbia, Missouri, and that he had just received a large shipment of the same. The informant also stated that the appellant drove an older-model green Pontiac and lived with his girlfriend, "Kay."

The tip was investigated by Detective Michael Himmel. During his investigation, he checked the utilities at the Quail Drive address and learned that they were registered in the name of Kaylicia Vanee Patrick. He also conducted surveillance and observed a green Pontiac parked at the apartment complex at 2621 Quail Drive. In addition to confirming the information about the appellant's car and girlfriend, Detective Himmel spoke with several other police officers and learned that the appellant was suspected of drug trafficking and that, approximately one year prior, he had been arrested for the sale of cocaine at the Quail Drive address and, approximately four months prior, he had been arrested for possession of cocaine.

Based on his investigation, Detective Himmel, on January 22, 1998, filed an

1. All statutory references are to RSMo 1994, unless otherwise indicated.

application and supporting affidavit for a search warrant in the Circuit Court of Boone County, Missouri. The affidavit stated:

This affidavit is in regards to ongoing narcotics activity involving a suspect identified as Stefan Koda Williams. This subject has a state ID # 00745045. Subject has an (sic) FBI # 980086LA2. Subject shows numerous prior arrests for narcotics violations. Williams presently has two active cases pending here in Boone County reference to narcotics violations.

During the month of January 1997 a cooperative citizen was utilized and a controlled purchase was made from Stefan Williams. The location of this activity was 2621 Quail Apt C.

On 09/06/97 a debriefing was conducted from the cooperative citizen and during this debriefing Stefan Williams was identified as selling $50 and $100 rocks of crack cocaine from his apartment at 2621 Quail Apt C.

On 09/16/97 Stefan Williams was arrested for a narcotics violation. This was filed under case 97013019. Stefan Williams identified his address as 2621 Quail Apt C. During this case file investigation which involved a short car chase in the area of Quail and Sylvan approximately 4 ounces of cocaine was recovered. During interview of Williams, he admitted to being in possession of the cocaine but stated it belonged to someone else. This case is still pending.

On 01/20/98 the Columbia Police Dept received information via crimestopper report that Stefan Williams was selling drugs on Quail Drive. The crimestopper went on to state that Stefan received a large quantity of cocaine to sell. A crimestopper also stated Stefan drives an older model green Pontiac. Crimestopper continued by stating that Stefan lives with a girlfriend by the name of Kay.

After receiving this information I had contact with Det Hammond and Det Parsons and learned that Stefan Williams was operating narcotics activity out of 2621 Quail Drive Apt C. I also conducted further follow up by conducting a utility check and learned that a Kaylicia Vanee PATRICK was living at 2621 Quail Drive Apt C. I located information within our computer system that she is associated to Stefan Williams also at this location. I have also conducted surveillance for this location and have observed Stefan Williams' vehicle parked in the rear of this complex.

It appears the information received from the Crimestopper in regards to Stefan Williams still operating at this location is accurate and correct. It appears that Stefan Williams is still conducting narcotics activity that is consistent with the information received in the above described paragraphs dating back to January of 1997.

After considering the application and supporting affidavit, the trial court found probable cause to issue and issued a search warrant for the Quail Drive address.

On January 23, 1998, officers from the Columbia, Missouri, Police Department arrived at 2621 Quail Drive, Apt. C, to execute the warrant. They knocked on the door, announced their presence, and then, after receiving no answer, forced open the door. When they entered the apartment, they discovered that the appellant was the only person present. He was wearing shorts and a shirt, but no shoes or socks. An officer ordered the appellant to lie down on the floor, then restrained him by handcuffing him.

While conducting a search of the residence, one officer noticed that the appellant had both of his hands down the back of his shorts. The officer pulled the appellant's hands out of the back of his shorts, then patted down the back and front. As a result of the frisk, the officer discovered a plastic bag containing what appeared to be five rocks of crack cocaine. It was later

determined that it was cocaine with a combined weight of 3.17 grams. Also, in their search, the officers recovered nearly $2,000 in cash, a police scanner, and an electronic scale, with what was later determined to be cocaine residue on it.

The appellant was indicted on March 27, 1998, and was charged by information with one count of trafficking in the second degree in the Circuit Court of Boone County, Missouri. On April 30, 1998, his defense counsel filed a motion to withdraw from the case because he was having difficulty contacting the appellant and would not attend scheduled meetings with him. This motion was overruled.

On May 12, 1998, the appellant filed a written motion to suppress "all property or matters seized from [the appellant during the search of the Quail Drive residence], including all papers, documents, clothing and other physical effects." In support of the motion, the appellant alleged that the search and seizure was illegal because the issuance of the warrant lacked probable cause. The appellant contended that the items seized should be excluded from evidence under the "fruit of the poisonous tree" doctrine.

On June 26, 1998, the appellant filed a motion to dismiss claiming that his prosecution under § 195.233 violated the equal protection clause of the U.S. Const. amend. XIV, § 1 and Mo. Const. art. I, § 10. Specifically, he alleged that the statute provides the same penalty for possession of two grams of cocaine in its "rock" form as possession of 150 grams in its "powder" form without any regard for its cocaine content. He further alleged that this results in discrimination against minorities and low-income persons because they are more likely to possess crack cocaine and, thus, represent a greater percentage of those arrested for and prosecuted under the statute in question. This motion was subsequently overruled.

On June 29, 1998, a hearing was held on the appellant's motion to suppress. The appellant did not appear. However, at trial, he claimed that he did not attend the suppression hearing because he was not apprised of it by his attorney. At the hearing on the motion to suppress, defense counsel told the court that he was encountering difficulty in contacting the appellant. He stated: "[The appellant] has failed to come to my office, even after several times when I've talked to him in person, and he's failed to do so within 30 minutes of when I've asked him to come." Further, the defense counsel confirmed that he had advised the appellant of the suppression hearing and that he had tried to contact the appellant by phone, but had only left messages with other people. After evidence was heard on the motion to suppress, it was taken under advisement. Sometime thereafter and before trial, the trial court overruled both the appellant's motion to suppress and his motion to dismiss.

The appellant's trial commenced on July 16, 1998. Before *voir dire*, the appellant told the court that he did not believe he had received adequate representation because he could not make contact with the defense counsel to properly prepare for trial. As a result, he was making an oral *pro se* motion to dismiss and replace his trial counsel. The appellant said he had spoken with his counsel two days before the trial, but that he had hired replacement counsel to represent him. However, replacement counsel did not appear. Under questioning from the court, the appellant admitted that he had not technically hired replacement counsel because he had not yet paid his fee as requested. After further questioning by the court as to his reasons for wanting to replace his trial counsel, the trial court overruled the appellant's motion.

The appellant's trial lasted one day. At the conclusion of all the evidence, the jury was instructed and retired for deliberations. The jury subsequently returned a verdict finding the appellant guilty of trafficking, as charged. The appellant filed a

motion for a new trial, which was overruled. He then was sentenced on October 13, 1998, to eighteen years imprisonment.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in denying his oral motion at trial to dismiss and replace his trial counsel because he did not receive effective assistance of counsel, as guaranteed by the Constitutions of the United States and Missouri, in that an irreconcilable conflict arose between himself and his trial counsel, resulting in a complete breakdown of communication between them. We disagree.

Initially, we address the State's contention that, because the appellant's claim was "being made for the first time on this appeal," it was "reviewable only as 'plain error' under Rule 30.20, V.A.M.R." With respect to this issue, the record would reflect that the appellant did raise with the trial court the issue of replacing his trial counsel for an irreconcilable conflict, so that it is not being raised for the first time on appeal.

■ We will not disturb a trial court's ruling on a motion to dismiss and replace counsel unless there is a clear abuse of discretion. *State v. Owsley*, 959 S.W.2d 789, 792 (Mo. *banc* 1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 191, 142 L.Ed.2d 156 (1998). In our review, we " 'will indulge every intendment in favor of the trial court.' " *Id.* (*quoting State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. *banc* 1989)).

■ A criminal defendant "is not entitled to the aid of a particular attorney as a matter of constitutional right." *State v. Taylor*, 778 S.W.2d 276, 279 (Mo.App.1989) (*citing State v. Bell*, 719 S.W.2d 763, 767 (Mo. *banc* 1986)). Instead, a defendant's right to be represented by chosen counsel "is qualified by the public right to effective and efficient administration of justice." *Id.* "To warrant substitution of counsel, a defendant must show 'justifiable dissatis-

faction' with appointed counsel." *Hornbuckle*, 769 S.W.2d at 96 (*citing State v. Gilmore*, 697 S.W.2d 172, 174 (Mo. *banc* 1985)). "To obtain a change of attorney on the eve of trial, a defendant must demonstrate an irreconcilable conflict with his appointed counsel." *Id.* For the appellant to prevail on a claim of irreconcilable conflict with his counsel, he must show through objective evidence a " 'total breakdown in communication.' " *Owsley*, 959 S.W.2d at 792 (*quoting State v. Parker*, 886 S.W.2d 908, 929 (Mo. *banc* 1994)). However, he cannot have created the irreconcilable conflict through his own misconduct. *Id.* at 793.

■ A careful review of the record reflects that, although the appellant made a *pro se* oral motion to dismiss and replace his trial counsel on the day of trial, the communication problems alleged between them had been ongoing. In this respect, the record reflects that on April 30, 1998, appellant's trial counsel filed a motion to withdraw from the case, which was overruled. In support of the motion, he alleged that he was having difficulty contacting the appellant and that the appellant refused to attend scheduled meetings with him. In addition, the record would reflect that the appellant's trial counsel had been unable to reach and speak with him over the telephone, and the appellant had not returned messages left for him. From this, if it chose to believe the appellant's trial counsel, which it was free to do, *State v. Clouse*, 964 S.W.2d 860, 864 (Mo.App. 1998), the trial court could have reasonably concluded that the appellant created the irreconcilable conflict alleged in his *pro se* motion to dismiss and substitute trial counsel through his own misconduct. *Owsley*, 959 S.W.2d at 793. Hence, we find no clear abuse of discretion in the trial court's denying the appellant's motion to replace his trial counsel on the day of trial.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in overruling his pretrial motion to suppress and admitting certain evidence at trial because the search and seizure at the Quail Drive location was illegal in that the warrant was not supported by probable cause. Specifically, the appellant contends that the affidavit filed in support of the search warrant was deficient in that: (1) it was based on hearsay which was uncorroborated or provided by an informant who was not known to the affiant as being reliable; and (2) it did not provide current information to demonstrate a fair probability that crack cocaine would be found at the appellant's residence. From this he asserts that the challenged evidence should have been excluded under the "exclusionary rule" as being fruit of the poisonous tree. We disagree.

■ " 'Ordinarily, a ruling on a pretrial motion to suppress may not be asserted as a ground of error on appeal because the pretrial motion to suppress and the admission at trial of the challenged evidence are two distinct procedures.' " *State v. Beishline,* 926 S.W.2d 501, 508 (Mo.App.1996) (*quoting State v. Norton,* 904 S.W.2d 265, 271 (Mo.App.1995)). Absent an objection at trial to the admission of the evidence challenged in the motion, the issue is not preserved for appellate review. *Id.* Here, although the appellant filed a pretrial motion to suppress the crack cocaine seized, as well as the rest of the State's evidence relating to the alleged illegal search of his apartment, the record reflects that he failed to object at trial to the admission of this evidence. As such, we do not review the denial of his motion to suppress, but review the admission of the challenged evidence at trial for plain error, which the appellant requests.

■ Initially, the question arises as to whether the appellant's claim is reviewable under Rule 29.12(b) or Rule 30.20 in that the Missouri Supreme Court, as well as all three districts of the Missouri Court of Appeals, have held both ways, as dis-

cussed, *infra.* The Missouri Supreme Court has on numerous occasions held that Rule 30.20 provides the proper standard of review in the case of plain error resulting from properly briefed, but otherwise unpreserved, error. *See, e.g., State v. Clemons,* 946 S.W.2d 206, 224 (Mo.*banc* ), *cert. denied,* 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Taylor,* 944 S.W.2d 925, 936 (Mo. banc 1997); *State v. Ervin,* 835 S.W.2d 905, 921 (Mo. *banc* 1992). However, on other such occasions, it has cited Rule 29.12(b) as controlling. *See, e.g., State v. Whitfield,* 939 S.W.2d 361, 366 (Mo.*banc* ), *cert. denied,* 522 U.S. 831, 118 S.Ct. 97, 139 L.Ed.2d 52 (1997); *State v. Harris,* 620 S.W.2d 349, 354 (Mo. banc 1981). All three districts of the Missouri Court of Appeals have also gone back and forth between the two rules as being controlling. For example, in the Eastern District, the court held in *State v. Candela,* 929 S.W.2d 852, 860 (Mo.App.1996), that Rule 29.12(b) controlled, but in *State v. Davis,* 914 S.W.2d 21, 22 (Mo.App.1995), that Rule 30.20 controlled. Likewise, in the Southern District, the court cited Rule 30.20 as controlling in *State v. Bogard,* 836 S.W.2d 87, 88 (Mo.App.1992), but relied on Rule 29.12(b) in *State v. Phelps,* 816 S.W.2d 227, 229 (Mo.App.1991). In the Western District, this court relied on Rule 30.20 in *State v. Robinson,* 864 S.W.2d 347, 350 (Mo.App.1993), but in *State v. Sloan,* 664 S.W.2d 41, 42–43 (Mo.App.1984), cited Rule 29.12(b) as controlling.

■ In interpreting and applying supreme court rules, we are to give the language used its plain and ordinary meaning. *State ex rel. Streeter v. Mauer,* 985 S.W.2d 954, 957 (Mo.App.1999). Rule 30.20 provides:

Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Whether briefed or not, plain errors af-

fecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

By its express terms, the rule would apply to error that is unpreserved, regardless of whether briefed or not. Rule 29.12(b) provides: "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The rule, on its face, would seem to cover the same ground as Rule 30.20. However, even though Rule 29.12(b) references "the court," without specifying trial, appellate, or both, the general heading of Rule 29 reads "MISDEMEANORS OR FELONIES—VERDICT, SENTENCE AND NEW TRIAL" and sets forth what is required of a trial judge with respect to these matters, which would indicate that Rule 29.12(b) governs trial courts, not appellate courts. The fact remains, however, that our appellate courts have cited both rules with respect to our plain error review on appeal.

 In resolving the issue of which rule controls for our plain error review here, we are mindful of the fact that we are bound by the most recent pronouncement of our supreme court, *Crede v. City of Oak Grove*, 979 S.W.2d 529, 534 (Mo. App.1998), which, according to our research, would appear in *Clemons*, which relied on Rule 30.20. *Clemons*, 946 S.W.2d at 224. It was decided in the same year as, but after, *Whitfield*, which relied on Rule 29.12(b). *Whitfield*, 939 S.W.2d at 366. The court made no mention of *Whitfield* in *Clemons*. In any event, for the reasons stated, we are bound by the supreme court's decision in *Clemons*, 946 S.W.2d at 224, and we will apply Rule 30.20 in determining whether to grant the appellant plain error review of his claim.

 Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court

when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." " 'The plain error rule should be used sparingly and does not justify a review of every [alleged] trial error that has not been properly preserved for appellate review.' " *State v. McMillin*, 783 S.W.2d 82, 98 (Mo. *banc* 1990) (*quoting State v. Valentine*, 646 S.W.2d 729, 731 (Mo.1983)); *see also State v. Silvey*, 894 S.W.2d 662, 670 (Mo. *banc* 1995).

 A plain reading of the rule indicates that plain error review involves a two-step process. Under the rule, the first step involves an examination to determine whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' " or in other words, whether on the face of the claim, "plain error" has, in fact, occurred. *State v. Brown*, 902 S.W.2d 278, 284 (Mo. *banc* 1995). In the absence of such a determination, a court should "decline to exercise its discretion" to review a claim of error under Rule 30.20. *Id.* The rule makes it clear that not all prejudicial error — that is, reversible error — can be deemed plain error. Plain errors are those which are "evident, obvious and clear." *State v. Bailey*, 839 S.W.2d 657, 661 (Mo.App.1992). If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

 The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice. *State v. Isa*, 850 S.W.2d 876, 884 (Mo. *banc* 1993). "Mere allegations of error and prejudice will not suffice." *Id.* "The determination [of] whether plain error exists must be based on a consideration of the facts and circumstances of each case." *State v. Cline*, 808 S.W.2d 822, 824 (Mo. *banc* 1991) (*citing State v. Sanders*, 541 S.W.2d 530,

533 (Mo. *banc* 1976)). When guilt is established by overwhelming evidence, no injustice or miscarriage of justice results requiring relief under the rule. *State v. Jordan*, 627 S.W.2d 290, 293 (Mo. *banc* 1982) (*citing State v. Bainter*, 608 S.W.2d 429, 431 (Mo.App.1980)).

 In claiming that the challenged evidence was inadmissible under the exclusionary rule, the appellant contends that it was "fruit of the poisonous tree" because it resulted from an illegal search and seizure in that the issuance of the search warrant in question was not supported by probable cause, as required by the Constitutions of the United States and Missouri, and § 542.276.4. Thus, in determining whether to grant plain error review, we must initially determine whether the appellant's claim facially establishes substantial grounds for believing that it was plain error for the trial court to admit the evidence in question because the search warrant was obviously and clearly not supported by probable cause, which admission resulted in manifest injustice or a miscarriage of justice.

> While the meaning of probable cause is a legal issue[,] its existence in a particular case is a question of fact. Thus, appellate review is not de novo. We give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990); *State v. Hawkins*, 760 S.W.2d 926, 927 (Mo.App.1988).

*State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990).

> Evidence is suppressed pursuant to the "exclusionary rule," which is based on the Fourth Amendment. *Willis v. State*, 630 S.W.2d 229, 233–34 (Mo.App. 1982). The rule is "an extraordinary sanction, judicially imposed, to limit searches and seizures to those conducted in strict compliance with the Fourth Amendment. It is a judicially created

remedy designed to safeguard Fourth Amendment rights...." *Id.* (citations omitted). The purpose of the Fourth Amendment is to protect the privacy and security of individuals from arbitrary invasions by the government by imposing a reasonableness standard on the discretion exercised by law enforcement officials in conducting searches and seizures. *State v. Damask*, 936 S.W.2d 565, 570–71 (Mo. banc 1996) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)).

*State v. Kriley*, 976 S.W.2d 16, 21 (Mo. App.1998). Stated another way, the exclusionary rule is a sanction designed to deter violations of the Fourth Amendment's guarantee of being free from illegal searches and seizures. In this respect, "[t]he Fourth Amendment guarantees that 'no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Berry*, 801 S.W.2d at 66.

 The Fourth Amendment probable cause requirement for the issuance of search warrants is found in Mo. CONST. art. I, § 15 and codified in § 542.276.4. Pursuant to § 542.276.4, probable cause is to be determined from the application for the search warrant and any supporting affidavit. As to such an application, § 542.276.2 requires, *inter alia*, that it be in writing and "[s]tate facts sufficient to show probable cause." § 542.276.2(5). Section 542.276.3 governs supporting affidavits and provides that:

> The application may be supplemented by a written affidavit verified by oath or affirmation. Such affidavit shall be considered in determining whether there is probable cause for the issuance of a search warrant and in filling out any deficiencies in the description of the person, place, or thing to be searched or of the property, article, material, substance, or person to be seized. Oral testimony shall not be considered.

Under the exclusionary rule, evidence will be suppressed if the warrant is " 'based on an affidavit "so lacking in indicia of probable cause as to render [official belief in] its existence entirely unreasonable." ' " *State v. Hammett*, 784 S.W.2d 293, 297 (Mo.App. 1989) (*quoting United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 699 (1984)).

▉▉▉ "[P]robable cause is a 'fair probability that contraband or evidence of a crime will be found,' " *Berry*, 801 S.W.2d at 66 (*quoting Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)), which is to be determined from the totality of the circumstances. *Id.* In making this determination, the judge

> must make a "practical, commonsense decision whether … there is a fair probability that contraband or evidence of a crime will be found." [*Gates*, 462 U.S.] at 238, 103 S.Ct. at 2332. That decision is made from all the circumstances set out in the affidavit, including the "basis of knowledge" and "veracity" of persons providing hearsay information. *Id.*

*Id.* A probable cause determination to support the issuance of a search warrant depends on the specific facts and circumstances of each case. *State v. Jones*, 959 S.W.2d 829, 833 (Mo.App.1997). "Only the probability of criminal activity, not a prima facie showing, is the standard of probable cause." *State v. Miller*, 815 S.W.2d 28, 32 (Mo.App.1991) (*citing Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546 (1983)).

▉▉▉ As stated, *supra*, the appellant's claim is based, *inter alia*, on his contention that the supporting affidavit of Detective Himmel was deficient because it was based on hearsay which was uncorroborated or provided by an informant who was not known to the affiant as being reliable. In this respect,

> [a]n affidavit which relies on hearsay is sufficient as long as there is a substantial basis for crediting the hearsay. *Hammett*, 784 S.W.2d at 296. Hearsay

in an affidavit may be found reliable when it is based on personal observation and it is corroborated. *State v. Hill*, 854 S.W.2d 814, 818 (Mo.App.1993).

*State v. Dawson*, 985 S.W.2d 941, 949–50 (Mo.App.1999). If the hearsay can be properly credited, there is no need to show the informant was reliable. *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982). The State does not dispute that the affidavit of Detective Himmel contained hearsay; however, it contends that proof of the reliability of the informant was not necessary in that the hearsay was properly verified.

▉▉▉ The determination of whether the hearsay is creditable requires necessarily that the issuing magistrate determine the " 'veracity' and 'basis of knowledge' of [the] persons supplying [the] hearsay information." *Dawson*, 985 S.W.2d at 949. "The concepts of 'veracity,' 'reliability,' and 'basis of knowledge' are relevant considerations but they are not entirely separate and independent requirements to be rigidly applied in every case." *State v. Hill*, 854 S.W.2d 814, 817 (Mo. App.1993) (*citing Gates*, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543). "Corroboration from other witnesses and from independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit." *Dawson*, 985 S.W.2d at 950; *see also State v. Williams*, 937 S.W.2d 330, 332 (Mo.App.1996).

In *Berry*, the Missouri Supreme Court addressed the level of corroboration that is necessary to establish probable cause on the basis of hearsay contained in a supporting affidavit to justify the issuance of a search warrant. *Berry*, 801 S.W.2d at 66–67. There the sheriff's office received an anonymous tip concerning a quantity of marijuana at the home of the defendants. The tip described with particularity the outside of the defendants' home and indicated personal knowledge of the existence of the marijuana, including, *inter alia*, the quantity involved and the defendants' han-

dling of it. *Id.* at 65. To the extent possible, the accuracy of the information provided was verified, including the location, vehicle, and exterior description given by the informant. *Id.* at 67. The supreme court, in concluding that, from the facts set forth in the supporting affidavit, the issuing court was justified in finding probable cause, stated, " '[W]ith every other bit of [the informant's] information being [thus personally] verified, [the officer] had "reasonable grounds" to believe that the remaining unverified bit of [the informant's] information—[that the [defendants'] home contained marijuana]—was likewise true.' " *Berry,* 801 S.W.2d at 67 (*quoting Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959)).

In ruling as it did, the *Berry* court relied on the decision in *United States v. Jackson,* 898 F.2d 79 (8 th Cir.1990). As to this decision, the court stated:

> In *United States v. Jackson,* 898 F.2d 79 (8th Cir.1990), a police officer based a warrant application on an anonymous telephone call. The caller described the location to which he had gone earlier that day in order to remove his daughter, who had been living at that location with the defendant. The caller also stated that he had seen what his daughter identified as marijuana in both the garage and the bedroom. The officer stated in his application that he had verified the location and description of the house and that the defendant lived there. The search warrant was issued on that basis and the *Jackson* court concluded that "a neutral and detached magistrate could make a practical, common-sense decision that probable cause existed." *Id.* at 81.

*Berry,* 801 S.W.2d at 66–67.

 In the instant case, as in *Berry* and *Jackson,* the police received an anonymous tip from an ordinary citizen, providing information as to alleged criminal activity, some of which, but not all, could be verified by investigation. "[H]earsay information in a search warrant affidavit from an ordinary citizen is 'more deserving

of a presumption of reliability than are informants from "the criminal milieu." ' " *Dawson,* 985 S.W.2d at 950 (*quoting State v. Dudley,* 819 S.W.2d 51, 54 (Mo.App. 1991)). The record would reflect that, to the extent possible, Detective Himmel investigated and verified that the appellant's motor vehicle, as described by the informant, was routinely parked behind the Quail Drive apartment complex in question and that the utilities of the apartment were in the name of a woman named Kay who was believed to be the girlfriend of the appellant. However, this information was information that anyone might have known and did not indicate any special or personal knowledge of the appellant or his activities, criminal or otherwise.

In *Gates,* the United States Supreme Court emphasized that, in corroborating information from an anonymous tip to establish probable cause for a search warrant, statements as to circumstances which readily would be known to anyone and mere conclusions not based on personal observations would not be sufficient in and of themselves to establish the requisite probable cause for issuing a search warrant. *Gates,* 462 U.S. at 239, 245–46, 103 S.Ct. at 2332–33, 2335–36. In *Hammett,* the Eastern District of this court reversed the trial court's overruling of the defendant's motion to suppress based on an illegal search warrant resulting from a deficient affidavit to establish probable cause. *Hammett,* 784 S.W.2d at 295–96. There, relying on *Gates,* the court, in support of its holding, reasoned that the affidavit in question was deficient because it did not include any information not readily known to others or personal observations of the drug activities alleged. *Id.* at 296.

 Although being mindful of the fact that "*Hammett* has been characterized 'as standing for the proposition that uncorroborated fourth-hand hearsay is not enough,' " *Dudley,* 819 S.W.2d at 54 (*quoting Berry,* 801 S.W.2d at 67), the factual situation in *Hammett* is similar to the one

here, other than the fact fourth-hand hearsay was not involved. As was the case in *Hammett,* Detective Himmel's affidavit is devoid of any references which could reasonably be interpreted as indicating that the informant had any special knowledge of the appellant or had personally observed his receipt of the alleged drug shipment, which would lend veracity to the informant's hearsay tip. However, this does not end our inquiry in that the "totality of the circumstances" analysis requires us to look at this information in light of all the circumstances, which would include references in the affidavit to alleged present and prior criminal activity. As stated, *supra,* "The concepts of 'veracity,' 'reliability,' and 'basis of knowledge' are relevant considerations but they are not entirely separate and independent requirements to be rigidly applied in every case." *Hill,* 854 S.W.2d at 817. Moreover, the fact the informant may not have actually observed criminal activity or contraband is not fatal to establishing probable cause. *Miller,* 815 S.W.2d at 30–32.

We believe that Detective Himmel's affidavit can be read reasonably as confirming through his own knowledge and the personal observations of other police officers that the appellant previously had been engaged in and arrested for criminal drug activity, in which he was thought to be engaging still. A suspect's past criminal behavior can be considered in determining whether probable cause exists to justify a search. *DaVee v. Mathis,* 812 S.W.2d 816, 822 (Mo.App.1991); *State v. Byler,* 810 S.W.2d 677, 682 (Mo.App.1991). "Corroboration from ... independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit." *Dawson,* 985 S.W.2d at 950. In this respect, the United States Supreme Court has stated,

> "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca,*

380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965). Professor LaFave has observed, "Following the lead of *Ventresca,* lower courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination." 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.5(a), at 4 (2d ed.1987). *See, e.g., United States v. Griffin,* 827 F.2d 1108, 1112 (7th Cir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988); *United States v. May,* 819 F.2d 531, 536 (5th Cir.1987); [*United States v. Flynn,* 664 F.2d 1296, 1302–03 (5th Cir.1982) ]; *United States v. Beusch,* 596 F.2d 871, 874 (9th Cir.1979); *State v. Morrill,* 205 Conn. 560, 534 A.2d 1165, 1170 (1987); *Caffo v. State,* 247 Ga. 751, 279 S.E.2d 678, 681 (1981); *State v. Alger,* 100 Idaho 675, 603 P.2d 1009, 1013 (1979).

*Dudley,* 819 S.W.2d at 54–55.

Although the appellant recognizes that past criminal behavior can be relevant to determine probable cause for a search warrant, he contends that the information contained in Detective Himmel's affidavit as to his past criminal drug activity was too stale and attenuated to be considered in establishing such probable cause. In support of this contention, he cites us to *Sgro v. United States,* 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), holding that "the proof [establishing probable cause] must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro,* 287 U.S. at 210, 53 S.Ct. at 140. The appellant bases his contention on the fact that the prior criminal activity referred to in Detective Himmel's affidavit was apparently in reference to an arrest, which occurred approximately one year prior to the search in question, for the sale of crack cocaine at 2621 Quail Drive, Apt. C, and an arrest for possession of cocaine

found in his car, which occurred approximately four months prior. We disagree.

 Although not sufficient in and of itself, we are not convinced that continued illicit drug activity, throughout the preceding year, including activity within the last four months, is too stale to be considered, along with all the other relevant circumstances alleged, to determine whether there was a fair probability that the appellant was engaging presently in such activity, especially where, as here, there were observations of narcotic activity by police officers other than the affiant. *See United States v. Golay*, 502 F.2d 182, 187 n. 10 (8th Cir.1974) (holding that information in an affidavit that an informant had seen stolen diamonds in defendant's hotel room sixteen days prior to the day the search warrant issued was not too stale to support a finding of probable cause for issuance of the warrant to search the room). We also do not believe that the fact that one of the arrests referenced involved a crime with respect to the appellant's motor vehicle, as opposed to the Quail Drive apartment, rendered it so attenuated as to be irrelevant to a probable cause determination with respect to the present criminal activity alleged. We are not so naïve as to believe that an alleged drug dealer would limit his or her sales to one location such that he or she would not likely transport it by motor vehicle from one place to another.

 "Even cases where the sufficiency of the affidavit is marginal should be largely determined by the preference to be accorded to warrants." *Hill,* 854 S.W.2d at 819 (*citing State v. Sheffield,* 821 S.W.2d 859, 862 (Mo.App.1991)). As such, based on the reasoning of the Missouri Supreme Court in *Berry,* relying on *Jackson,* we believe that the hearsay information provided in Detective Himmel's affidavit in support of the search warrant issued in this case was sufficiently verified, when viewed in light of the observations of the police officers as to criminal activity, so as to allow the issuing court to "have made a practical, common-sense decision that there existed a fair probability" that crack cocaine would be found at 2621 Quail Drive, Apt. C, and that a search warrant should issue for the same. *Berry,* 801 S.W.2d at 67.

For the reasons stated, we find that the appellant's claim, that the search warrant was illegal, on its face, does not assert substantial grounds for believing that the trial court erred in issuing the search warrant. Hence, we decline plain error review.

Point denied.

### Conclusion

The circuit court's judgment of the appellant's jury conviction for trafficking, § 195.223, is affirmed.

All concur.