STATE of Missouri, Respondent,

v.

David WILLIS, Appellant.

No. WD 60463.

Missouri Court of Appeals,
Western District.

Feb. 18, 2003.

Andrew A. Schroeder, Assistant State Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Philip M. Koppe, Assistant Attorney General, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT ULRICH, Judge.

David E. Willis ("Mr. Willis") appeals his convictions following a bench trial for involuntary manslaughter, section 565.024, RSMo 1994, and assault in the second degree, section 565.060.1(4), RSMo 1994, and consecutive seven- and four-year sentences respectively; and his conviction for driving with a suspended license, section 302.321, RSMo Cum.Supp.1999, and corresponding concurrent one-year sentence. Mr. Willis raises two points on appeal. His first claim is that the trial court erred in overruling his motion to suppress evidence and corresponding objections at trial because evidence seized during the testing of his blood and urine was a violation of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 15 of the Missouri Constitu-

tion. He claims that the affidavit used to support the search warrant did not establish that a fair probability existed that his blood and urine would disclose the presence of contraband constituting evidence of a crime, and the evidence of contraband found in his blood and urine should be suppressed as fruit of the poisonous tree. In his second point on appeal, Mr. Willis claims that the trial court plainly erred in entering a guilty verdict and sentencing him for driving with a suspended license, section 302.321, RSMo Cum.Supp.1999, because the State violated his due process rights and right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution in that the State failed to prove beyond a reasonable doubt that he was guilty of the offense because the State presented no evidence at trial that he was in fact operating a motor vehicle on April 13, 2000, the date of the charged offense. The judgment of the trial court is affirmed in part and reversed in part.

### Factual and Procedural History

On April 13, 2000, at approximately 6:00 p.m., Mr. Willis was driving southbound in a white Ford Bronco (the "Bronco") on Highway 71 in Jackson County, Missouri. The Bronco contained four passengers including two adults, Tela Griddine and Donna Sanders, and two children, nine-year old Phillip Herndon ("Phillip") and two-year old Brandon Sanders ("Brandon"). Other drivers observed Mr. Willis' Bronco approaching their vehicles from behind and described him as "driving aggressively," and "jockey[ing] for position, trying to get to the front of the pack" [of cars] by changing lanes and driving faster. The posted speed limit on Highway 71 was 55 miles per hour. The Bronco appeared to exceed the speed limit by 20–25 miles per hour.

While driving on the highway, Mr. Willis attempted to pass a white car by moving into the right lane of traffic. About the same time, the white car merged into the right lane in an attempt to get out of Mr. Willis' way. When the white car merged into the right lane, Mr. Willis drove onto the shoulder of the highway. A disabled trailer was parked on the shoulder of the highway, causing Mr. Willis to swerve back into the right lane of traffic. As he swerved back into the right lane of traffic, Mr. Willis lost control of the Bronco. The Bronco crossed the highway into the median and flipped one and a half times before coming to rest in the northbound lane of the highway.

As the Bronco rolled over, one of the female passengers was thrown from the vehicle. Brandon, the two-year old child, sustained an injury to one of his ears that caused substantial bleeding. One of the witnesses to the accident approached the Bronco and observed a lady holding Brandon inside the Bronco. She took Brandon from the female passenger and carried him to the shoulder of the road. She then handed Brandon to Mr. Willis. As she was handing Brandon to Mr. Willis, she noticed a faint smell of alcohol on his breath. Phillip, the nine-year old child, suffered two impacts to his head resulting in a large skull fracture, hemorrhaging around the brain, bruising, extensive internal bleeding, and other various injuries. He died in the crash as a result of accidental "blunt head trauma."

Kansas City Police Officer, James Fuller ("Officer Fuller"), was dispatched to investigate the accident. When he arrived, several police officers were already on the scene. They informed Officer Fuller that Mr. Willis, who was being transported to a hospital for treatment of a head injury and

broken collarbone, emitted an "aroma of alcohol" and may be "impaired." Officer Fuller directed Officers Eric Braden ("Officer Braden") and Eric Helrich ("Officer Helrich") to follow Mr. Willis to the hospital and observe his behavior.

Upon arriving at the hospital, Officer Braden asked Mr. Willis to provide the police with a urine and blood sample. Mr. Willis refused. Officer Fuller subsequently drafted an application for a search warrant with a supporting affidavit that read as follows:

> On 4–13–2000 at about 1800 hours at or near 75th and N. 71 Hwy, Mr. David E. Willis, B/M, 8–18–67, was the driver of a southbound vehicle that lost control, entered the grassy median, and overturned. The stated driver, David E. Willis, was driving at an excessive speed, attempting to pass slower southbound traffic by passing on the right (west) shoulder, when he lost control, skidded into the grassy median, and the vehicle overturned, causing the death of an unrestrained passenger a Mr. Phillip Herndon, B/M, 12–21–90. Responding officers detected an aroma of alcohol on his [David Willis'] breath. Suspect refused a consent to search.

After a Jackson County circuit court judge signed the search warrant, Officer Fuller drove to the hospital to execute it. Mr. Willis initially refused to submit to any testing. His behavior was erratic, vacillating from calmness to belligerency. Officer Fuller concluded that Mr. Willis was under the influence of some type of narcotic or alcohol. Mr. Willis eventually agreed to provide a blood and urine sample.

The lab results of Mr. Willis' blood sample established the presence of cocaine. The results of his urine sample showed traces of alcohol, marijuana, and cocaine. At trial, a toxicologist analyzed the lab results and concluded that Mr. Willis was not under the influence of alcohol or marijuana at the time of the offense. The trace amounts of alcohol and marijuana could not establish that Mr. Willis had ingested marijuana or alcohol on the day of the accident. The toxicologist also concluded, however, that Mr. Willis was under the influence of cocaine at the time of the accident because the amount of cocaine in his system was "within the range [of] people ... who have cocaine intoxication."

Mr. Willis was charged by indictment on July 12, 2000, with one count of murder in the second degree, section 565.021.1(2), RSMo 1994, an alternate count of involuntary manslaughter, section 565.024, RSMo 1994, two counts of endangering the welfare of a child in the first degree, section 568.045, RSMo 1994, one count of assault in the second degree, section 565.060.1(4), RSMo 1994, and one count of driving with a suspended license, section 302.321.1, RSMo Cum.Supp.1999. The driving with a suspended license charge, section 302.321.1, was severed from the other counts at Mr. Willis' request and tried on April 9, 2001, without a jury, before the trial court judge. The other four charges were tried before a jury on April 9, 2001. The jury was unable to reach a verdict and the trial ended in a mistrial on April 12, 2001. On May 25, 2001, the trial court judge entered judgments of acquittal on the murder in the second-degree count and the two counts of endangering a child in the first degree.

Defense counsel for Mr. Willis filed a motion to suppress evidence arguing that the results of the blood or urine tests should be suppressed as fruits of the poisonous tree because: (1) the affidavit supporting the search warrant failed to establish probable cause; and (2) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The trial court

overruled Mr. Willis' motion to suppress. At the bench trial, Mr. Willis was convicted of involuntary manslaughter, section 565.024, RSMo 1994, assault in the second degree, section 565.060.1(4), RSMo 1994, and driving with a suspended license, section 302.321, RSMo Cum.Supp.1999. On September 5, 2001, the court sentenced Mr. Willis to seven years imprisonment for the involuntary manslaughter charge, four years imprisonment on the assault in the second degree charge, and one year imprisonment on the driving with a suspended license charge. The first two sentences are to run consecutively with the third sentence to run concurrent to the first two. Following his convictions, Mr. Willis filed this appeal.

## Standard of Review

■ "Whe[n] ... a criminal defendant's pretrial motion to suppress evidence is overruled, and the defendant objects to the admission of the evidence at trial, we will review the denial of the motion." *State v. Rowe*, 67 S.W.3d 649, 654 (Mo. App. W.D.2002) (citing *State v. Williams*, 9 S.W.3d 3, 11 (Mo.App. W.D.1999)). Appellate review of a motion to suppress evidence is limited to determining whether the trial court's decision was supported by substantial evidence. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998) (citing *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc 1991)). "While the meaning of probable cause is a legal issue; its existence in a particular case is a question of fact." *Williams*, 9 S.W.3d at 13 (quoting *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990)). Appellate review of whether a search warrant lacked probable cause so as to render the resulting search and seizure illegal is *not de novo*. *Id.* (emphasis added). "Great deference [is given] to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and we reverse only if that determination is clearly erroneous." *State v. Middleton*, 995 S.W.2d 443, 457 (Mo. banc 1999), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999) (quoting *Berry*, 801 S.W.2d at 66). The trial court's decision is clearly erroneous if this court is "left with a definite and firm belief a mistake has been made." *State v. West*, 58 S.W.3d 563, 567 (Mo.App. W.D.2001). All evidence and any reasonable inferences therefrom are viewed in the light most favorable to the trial court's ruling. *Id.* (citing *State v. Tackett*, 12 S.W.3d 332, 336 (Mo.App. W.D.2000)). Both the record at the suppression hearing as well as the trial court record, including any evidence offered at trial, are considered. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). When the trial court's decision is "plausible in light of the record viewed in its entirety," an appellate court "may not reverse [a trial court's decision] even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *State v. Milliorn*, 794 S.W.2d 181, 184 (quoting *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), *quoting Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). On appeal, great deference is given to the trial court's ability to weight the credibility of witnesses. *Id.* at 183.

## Point I: Whether Affidavit was Sufficient to Establish Probable Cause and Support Resulting Search Warrant

■ Mr. Willis' first contention is that the evidence obtained pursuant to the blood and urine samples he gave is inadmissible under the exclusionary rule because it was "fruit of the poisonous tree."

He claims that the evidence was "fruit of the poisonous tree" because it resulted from an illegal search and seizure in that the search warrant that was issued was not supported by probable cause as required by the Constitutions of the United States and Missouri and section 542.276.4, RSMo 2000. Specifically, he argues that the affidavit executed by Officer Fuller to support the search warrant failed to establish probable cause because it was based on hearsay statements from an unknown number of unidentified police officers that they detected an "aroma of alcohol" on his breath. Mr. Willis asserts that the affidavit was deficient for failing to reflect any observations about his "appearance, speech, motor skills, or behavior" and for failing to state whether he failed one or more field sobriety tests or refused to submit to such tests.

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The probable cause requirement is found in the Missouri Constitution Article I, Section 15 and codified in section 542.276.4, RSMo 1994. Section 542.276.4, RSMo 2000, provides that probable cause is to be established from the application for the search warrant and any supporting affidavit. As to the application, section 542.276.2 mandates, *inter alia*, that the application "be in writing" and "state facts sufficient to show probable cause for the issuance of a search warrant." Section 542.276.3, RSMo 1994, addresses supporting affidavits and provides that "[s]uch affidavit shall be considered in determining whether there is probable cause for the issuance of a search warrant...." The existence or nonexistence of probable cause is to be determined from the four corners of the application of the search warrant and any supporting affidavits. *State v. Dowell*, 25 S.W.3d 594, 604 (Mo.App. W.D. 2000) (citing *State v. Miller*, 815 S.W.2d 28, 32 (Mo.App. E.D.1991)).

Probable cause is a "fair probability that contraband or evidence of a crime will be found." *Berry*, 801 S.W.2d at 66 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). "The test for determining whether probable cause has been established for the issuance of a search warrant is the 'totality of the circumstances.'" *State v. Hill*, 854 S.W.2d 814, 817 (Mo.App. S.D.1993) (quoting *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 554). Whether there is probable cause sufficient to support the issuance of a search warrant is dependent on the specific facts and circumstances of each case. *Dowell*, 25 S.W.3d at 605 (citing *Williams*, 9 S.W.3d at 14). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Gates*, 462 U.S. at 231, 103 S.Ct. at 2328, 76 L.Ed.2d at 554). Search warrants, therefore, should not be deemed invalid by "interpreting affidavits in a hypertechnical rather than common sense manner." *Hill*, 854 S.W.2d at 818. Rather, the judge issuing the warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Middleton*, 995 S.W.2d at 457 (quoting *State v. Laws*, 801 S.W.2d 68, 69 (Mo. banc 1990)). It is no longer necessary for "the veracity and basis of knowledge of informants ... [to] be established." *Id.* The affidavit need not prove "beyond a reasonable doubt or by a

preponderance of the evidence" that criminal activity is afoot. *Hill,* 854 S.W.2d at 819. "Only the probability of criminal activity, not a prima facie showing, is the standard of probable cause." *Miller,* 815 S.W.2d at 32 (citing *Gates,* 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546). "Even cases where the sufficiency is marginal should be largely determined by the preference to be accorded to warrants." *Hill,* 854 S.W.2d at 819 (citing *State v. Sheffield,* 821 S.W.2d 859, 862 (Mo.App. S.D.1991)).

■ Mr. Willis claims that hearsay statements from unidentified and unknown numbers of police officers that they detected the "aroma of alcohol" on Mr. Willis' breath is insufficient on its own to establish probable cause sufficient for the issuance of a search warrant. This argument is unavailing for two reasons. First, "[c]orroboration ... from independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit." *State v. Dawson,* 985 S.W.2d 941, 950 (Mo.App. W.D. 1999) (citing *Hill,* 854 S.W.2d at 818). Here, the hearsay statements were "independent observations of police officers." As such, they create a substantial basis for crediting the statements regarding the fact that Mr. Willis emitted an "aroma of alcohol." Second, the affidavit in question contained several statements besides the fact that responding officers detected an "aroma of alcohol" on Mr. Willis' breath. Not only does the affidavit recite that Mr. Willis' breath smelled of alcohol, but it also states that he had been driving at an excessive speed and that he attempted to pass slower traffic by passing on the right

shoulder of the highway. In addition, he lost control of the vehicle and skidded into a grassy median resulting in the vehicle overturning and causing the death of a nine-year old passenger. The affidavit supporting the request for a search warrant does not need to provide proof of criminal activity beyond a reasonable doubt or [even] by a preponderance of the evidence. *Hill,* 854 S.W.2d at 819 (citation omitted). Rather, it only needs to demonstrate a "probability" of criminal activity. *Id.* The combination of the factors stated above and the "aroma of alcohol" on his breath are sufficient to establish a "fair probability" that tests on Mr. Willis' blood and urine would show that he was intoxicated. *Berry,* 801 S.W.2d at 66 (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 527).[1]

Mr. Willis also claims that a driver that is involved in a car accident should not be required to give urine and blood samples merely because he smells of alcohol. He claims that a citizen that has one glass of wine at dinner is likely to emit an "aroma of alcohol." These arguments are equally unavailing. The totality of the circumstances is considered when determining whether probable cause exists to justify a search warrant. *Hill,* 854 S.W.2d at 817. The totality of the circumstances included erratic and illegal driving that significantly contributed to cause the single vehicular accident that included the detection of alcohol on the breath of the driver. The conduct of the driver described in the affidavit, in addition to breaching legally established standards, may reasonably demonstrate the actions of one who is alcohol-impaired. A person that drinks one glass of wine at dinner would not normally dis-

1. Mr. Willis argues that tests indicated that his blood alcohol level was "zero." This argument is meritless because the affidavit does not have to establish probable cause by "showing that a belief be correct or more

likely true than false." *Berry,* 801 S.W.2d at 66 (quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality opinion)).

play the erratic behavior that Mr. Willis displayed. The affidavit established probable cause sufficient to issue a search warrant.

Mr. Willis next argues that the good faith doctrine of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not apply to render the search warrant at issue in this case valid. As stated, the search warrant was supported by probable cause and, thus, valid. Therefore, an analysis of the *Leon* exception is not needed to make the search warrant valid. For that reason, this argument is not addressed.

The affidavit prepared by Officer Fuller stated sufficient probable cause to support the issuance of a search warrant. Mr. Willis' first point on appeal is denied.

### Point II: Plain Error Review of Conviction for Driving With A Suspended License

In his second point on appeal, Mr. Willis argues that the trial court plainly erred in convicting and sentencing him for driving with a suspended license, section 302.321, RSMo Cum.Supp.1999, because the State failed to present a prima facie case. He contends that the State failed to prove that he was driving a motor vehicle on the date of the accident, April 13, 2000, and, thus, his conviction and sentence for said charge should be reversed. He claims that the trial court's error denied him due process of law and a right to a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution. Mr. Willis acknowledges that he did not challenge the sufficiency of the evidence regarding this charge at trial. He asks, however, that the issue be reviewed as a matter of plain error. Rule 30.20. The

State agrees that Mr. Willis' second point on appeal has merit.

In its discretion, an appellate court may consider "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. Plain error review is, however, to be used cautiously and may not be used to substantiate review of every point that has not been preserved for appellate review. *State v. Lubbers*, 81 S.W.3d 156, 160 (Mo. App. E.D.2002) (citing *State v. Clemons*, 946 S.W.2d 206, 224 (Mo. banc 1997)). "If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Crenshaw*, 59 S.W.3d 45, 49 (Mo.App. E.D. 2001) (quoting *State v. Withrow*, 8 S.W.3d 75, 77 (Mo. banc 1999)).

Mr. Willis concedes that he did not adequately preserve the claimed error. First, Mr. Willis waived the error when he failed to ask the court to enter a judgment of acquittal at the close of the State's evidence. Second, he failed to preserve the error by not making a motion for judgment of acquittal at the close of all the evidence. Nonetheless, Mr. Willis' contention that the State failed to present sufficient evidence to make a prima facie case that he was driving a motor vehicle on the date of the accident is a claimed error that would constitute plain error affecting substantial rights within the purview of Rule 30.20. *State v. Thomas*, 595 S.W.2d 325, 328 (Mo.App. S.D.1980).

When convicting a defendant of a criminal offense, the State is required, as a matter of due process, to prove beyond a reasonable doubt "each and every element of a criminal offense, and its failure to do so requires the reversal of any conviction obtained under those circumstances." *State v. Bass*, 81 S.W.3d 595,

614 (Mo.App. W.D.2002) (citing *State v. Kelly,* 43 S.W.3d 343, 350 (Mo.App. W.D. 2001)). In this case, Mr. Willis was charged with and convicted of, *inter alia,* one count of driving with a suspended license, section 302.321, RSMo Cum.Supp. 1999. The elements of driving with a suspended license are provided in section 302.321.1, RSMo Cum.Supp.1999, which reads, in pertinent part,:

> A person commits the crime of driving while revoked if he operates a motor vehicle on a highway when his license or driving privilege has been canceled, suspended or revoked under the laws of this state and acts with criminal negligence with respect to knowledge of the fact that his driving privilege has been canceled, suspended or revoked.

To convict a defendant under this statute, the State must prove beyond a reasonable doubt that the defendant's license had been suspended, that the defendant acted with criminal negligence with respect to knowledge of the fact that his driving privilege has been suspended, and that the defendant was operating a motor vehicle on the highways of the State while the license was suspended. Mr. Willis does not challenge the sufficiency of the evidence presented to prove that his license was suspended or that he acted with criminal negligence with respect to knowledge of the fact that his driving privileges had been suspended. Rather, he claims that the State failed to prove that he was operating a motor vehicle upon the highways of this State while his license was suspended.

The record demonstrates that the charge for driving with a suspended license was severed from the other counts and tried before the court following waiver of Mr. Willis' right to a jury trial. At the bench trial, the State presented a certified copy of Mr. Willis' driving record, which showed that his license was suspended on November 4, 1998. Defense counsel presented no evidence of Mr. Willis' license being reinstated. The State met its burden of proving that Mr. Willis' license was suspended as of the date of the accident, April 13, 2000. No other evidence was presented. The State was required by section 302.321.1, RSMo Cum.Supp.1999, to prove beyond a reasonable doubt that Mr. Willis had been "operat[ing] a motor vehicle on a highway when his license ... ha[d] been ... suspended." Because the State failed to present any evidence of this element of the offense, the State failed to meet its burden of proving that Mr. Willis was driving with a suspended license. A suspended license is insufficient on its own to support a conviction for driving with a suspended license. For that reason, point two of Mr. Willis' appeal is granted.

Mr. Willis' convictions and sentences for involuntary manslaughter, section 565.024, RSMo 1994, and assault in the second degree, section 565.060, RSMo 1994, are affirmed. The portion of the trial court's judgment convicting Mr. Willis for driving with a suspended license, section 302.321, RSMo Cum.Supp.1999, is reversed. Mr. Willis' concurrent one-year sentence for driving with a suspended license is vacated.

All concur.