**STATE of Missouri, Respondent,**

v.

**Michael D. HAMMETT, Appellant.**

No. 55439.

Missouri Court of Appeals,
Eastern District,
Division Six.

Dec. 26, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 6, 1990.

Application to Transfer Denied
March 13, 1990.

Donald K. Gerard, Clayton, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

This case raises the issue of the sufficiency of an affidavit for a search warrant based on unsubstantiated fourth-hand hearsay and the applicability of the good-faith exception to the exclusionary rule. We find, under a "totality of the circumstances analysis",[1] that probable cause did not exist for the warrant to issue. Further, we are compelled to hold that the affidavit was "so lacking in indicia of probable cause"[2] that reliance on the search warrant was unreasonable. We reverse defendant's convictions.

The affidavit recites that on November 13, 1987, a law enforcement officer was contacted at his home by an informant who wished to remain anonymous. It does not disclose whether the contact was in person or by phone. The affidavit says that the officer "was told by the informant that there was going to be a drug meeting" on the following night on defendant's farm "and that a large group of drug users would be coming to the farm to meet, buy, use and trade drugs, some from as far away as California, Ohio and other states."

The affidavit does not specifically indicate from whom the informant received his information. Apparently, he obtained his information from his wife. The wife received her information from a person referred to only as "another lady." The "lady," according to the affidavit, received her information from defendant's mother. Nothing in the affidavit discloses the means or method by which, or the time when, this information passed from one person to another.

In the affidavit, the officer set forth that he had known the informant for two years, believed him to be a law abiding citizen, and considered him truthful and reliable. According to the affidavit, the informant had furnished a former sheriff with information as to where marijuana was growing, which led to the confiscation of the plants from the location indicated. Nothing in the affidavit, however, indicated anything about the credibility or reliability of the informant's wife, "another lady," or defendant's mother.

The search warrant was issued solely on this affidavit, which is set out in Appendix A. Although the affidavit recited that all the events were to occur the following night, the warrant was executed the following afternoon. The return reflects that the first item was inventoried at 1:31 p.m. and the search was completed by 4:09 p.m.

Defendant's motion to suppress the evidence seized pursuant to this warrant was denied. The evidence was admitted over defendant's continuing objection. Defendant was found to have violated §§ 195.020 and 195.270, RSMo 1986.

For many years, the leading cases discussing the requirements for valid affidavits for search warrants were *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In *Aguilar*, the Court acknowledged that an affidavit may be based on hearsay information, but the issuing judge "must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was 'credible' or his information 'reliable.'" *Aguilar*, 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. Thus, *Aguilar* used a two-prong test: the "basis of knowledge" prong and the "veracity" prong. Under *Aguilar*, failure to establish both prongs resulted in a finding that the affidavits did not provide a sufficient basis

**1.** *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983).

**2.** *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 699 (1984).

for a finding of probable cause for a search warrant. Evidence obtained under such a warrant was inadmissible under the exclusionary rule.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court abandoned "the 'two-pronged test' established by [its] decisions in *Aguilar* and *Spinelli*." *Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The Court replaced that test with a "totality-of-the-circumstances analysis." *Id.* The issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* *See also State v. Bauers*, 702 S.W.2d 896, 900 (Mo.App.E.D.1985). That substantial basis must exist before the search warrant is issued, and not afterwards with the benefit of 20–20 hindsight. *See State v. Phillips*, 532 S.W.2d 533, 535 (Mo.App.S.D. 1976).

The *Gates* decision does not give the issuing judge unbridled discretion. *Gates* states that "[a]n affidavit must provide the [issuing judge] with a *substantial* basis for determining the existence of probable cause." *Id.* at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549 (emphasis added). Further, "[s]ufficient information must be presented to the [judge] to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the [judge's] duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 549.

In *Gates*, the affidavit recited that an anonymous letter received by a police department said that (1) Lance and Susan Gates sell drugs; (2) they live in a condominium at a certain location; (3) they buy drugs in Florida; (4) Susan Gates drives the car to Florida; (5) Lance Gates flies to Florida to drive the car back; (6) on May 3 she will drive to Florida; (7) a few days later, he will fly to Florida to drive the car back; (8) the car will have over $100,000 worth of drugs in it; and (9) there is over $100,000 worth of drugs in their basement.

The officer who signed the affidavit, which accompanied the letter, investigated and learned that (1) Lance Gates had an Illinois driver's license indicating a specific address; (2) Lance Gates had a reservation on a plane from Chicago to West Palm Beach, Florida on May 5; (3) agents watched Lance Gates get on the plane in Chicago and off the plane in West Palm Beach; (4) agents watched him take a taxi to a motel; (5) Lance Gates went to a room registered in Susan Gates' name; (6) the next morning, Lance Gates and an unidentified woman left the motel together in an automobile bearing Illinois license plates; (7) the license plate number was registered to a vehicle owned by Lance Gates; and (8) the interstate highway Gates was traveling was one frequently used by people traveling to the Chicago area. This information was included in the affidavit.

The *Gates* court held that "there was a fair probability that the writer of the anonymous letter had obtained his entire story either from the Gateses or someone they trusted. And corroboration of major portions of the letter's predictions provides just this probability." *Id.* at 246, 103 S.Ct. at 2336, 76 L.Ed.2d at 553.

■ We examine the affidavit here in accordance with the totality-of-the-circumstances analysis enunciated in *Gates*. As to the "veracity" of the persons supplying hearsay information, the affidavit discloses that the affiant knew the informant for two years, considered him to be a law abiding citizen, and believed him to be truthful and reliable. Affiant also checked with a former sheriff and was told that the informant in 1982 and 1983 had furnished information concerning the location of marijuana plants, and plants were found as indicated.

Had the informant conveyed first-hand observations of facts, we have no doubt that his "veracity" was sufficiently established. Such is not the case. Rather, he relates information that his wife allegedly received from an unidentified "lady," who allegedly obtained it from defendant's mother.

There is nothing in the affidavit that establishes the "veracity" of the informant's wife, "another lady," or defendant's mother. The affidavit does not state that the officer is acquainted with any of these three women, nor does it provide any information as to their believability. Thus, it was impossible for the issuing judge to determine the "veracity" of these three women's statements.

In *Gates*, the Court observed that "an affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented.'" *Gates*, 462 U.S. at 242–243, 103 S.Ct. at 2334, 76 L.Ed.2d at 550 (quoting *Jones v. United States*, 362 U.S. at 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697, 707 (1960)). And "double hearsay may satisfy the test." *United States v. Wylie*, 705 F.2d 1388, 1390 (4th Cir.1983); *see also United States v. Skramstad*, 649 F.2d 1259, 1263 (8th Cir. 1981); 1 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.3(d) (2d ed. 1987).

When there are multiple levels of hearsay, however, sufficient information must be presented so that all levels of hearsay may be properly relied upon. *United States v. Carmichael*, 489 F.2d 983, 986 (7th Cir.1973); *Skramstad*, 649 F.2d at 1263; *Wylie*, 705 F.2d at 1390; 1 LAFAVE, *supra*, § 3.3(d), at 667. Here, there was no information presented to credit the hearsay information at the second, third, and fourth levels of the hearsay.

As to the "basis of knowledge" referred to in *Gates*, the affidavit contains no detailed *facts* to indicate the basis on which the informant formed his conclusion. The affidavit, rather, discloses that the informant is passing on only conclusions, i.e. "there was going to be a drug party and drug meeting" the following night, that "a large group of drug users would be coming to the farm to meet, buy, use and trade drugs," and "there is now on the farm an underground chamber or basement used for storage of drugs." Pointedly, the affidavit does not say that informant (1) had been to defendant's farm; (2) had observed any drugs there; or (3) had any knowledge that drugs were in the underground chamber or basement. Nor does the affidavit disclose when, where, or how the conversation from one woman to the next to the next had occurred.

Further, in *Gates* when the police officer received information that drugs would be brought to the Gates residence from Florida, the officer, unlike here, corroborated as much of the information furnished as possible. Only then did he seek a search warrant. It was that "corroboration of major portions of the letter's predictions" that provided the probability justifying the issuance of the search warrant. *Gates*, 462 U.S. at 246, 103 S.Ct. at 2336, 76 L.Ed.2d at 553. Here, the affidavit does not disclose any corroboration of the fourth-hand information.

*Gates* requires that an issuing judge not merely ratify "the bare conclusions of others." *Gates*, 462 U.S. at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 548. Rather, "[s]ufficient information must be presented to the [judge] to allow that official to determine probable cause." *Id.* Yet, "bare conclusions of others" without corroboration is all that was presented to the issuing judge in the present case. In compliance with the dictates of *Gates* that we "conscientiously review the sufficiency of affidavits on which warrants are issued," we must hold that the affidavit was not sufficient to authorize the issuance of a search warrant.

■ Traditionally, this lack of probable cause would end our inquiry. The evidence seized pursuant to the invalid warrant would be inadmissible under the exclusionary rule. *Leon*, however, while leaving "untouched the probable-cause standard and the various requirements for a valid warrant," recognized a good-faith exception to this rule. *Leon*, 468 U.S. at 923,

104 S.Ct. at 3421, 82 L.Ed.2d at 699. That exception is applicable so long as the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral judge. *Id.* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. In such circumstances, the evidence should not be suppressed.

■ The *Leon* Court, however, stated that suppression remains appropriate in four situations: (1) when the issuing judge was misled by information that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the judge wholly abandons the judicial role; (3) if the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; or (4) if the warrant is so facially deficient that the executing officers cannot presume it to be valid. *Id.* at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–99.

■ Here, the third situation recognized in *Leon* is involved. The affidavit relied on by the issuing judge is "so lacking in indicia of probable cause as to render official belief" in the search warrant unreasonable.

"Quality of information, not quantity, is what establishes probable cause." *State v. Huft*, 106 Wash.2d 206, 720 P.2d 838, 841 (1986). Here, the quality, as well as the quantity, of the information was insufficient to establish any indicia of probable cause. The affidavit is "bare bones" and incapable of supporting a finding of probable cause. The good-faith exception to the exclusionary rule is not available. *See, e.g., United States v. Jackson*, 818 F.2d 345 (5th Cir.1987).

At this point, consideration must be given as to whether to reverse, or to reverse and remand. The trial transcript discloses that the sheriff, four deputy sheriffs, and four members of the highway patrol went to defendant's residence. When they arrived, eight to twelve individuals were outside, apparently barbequing meat. No evidence of drugs or drug usage was observed.

The law enforcement officers "jumped out of the patrol cars and identified [themselves] and told everyone to freeze and put up their hands." The officers' weapons were drawn; everyone complied with the order.

The sheriff had a deputy search defendant's wife. The sheriff, and another deputy, went in the house to determine if anybody was hiding in the house. No one was.

The sheriff then radioed his office; "[e]verything was secured at that point." The sheriff then went to defendant and told him that he (the sheriff) had a search warrant, which the sheriff read to defendant. Thereafter, defendant said that all he had was marijuana, and he led the officers to it. Defendant was then arrested. A further search of the residence was then conducted, in which other drugs were found.

It is clear that the marijuana and other drugs seized from defendant were the result of the invalid search warrant. In the sheriff's words, "everything was secured" before the search warrant was read to defendant. The officers, through their words and actions, were completely in control of the property and defendant before defendant led the officers to the marijuana. Thus, the marijuana and other seized drugs are not admissible in evidence. *See State v. White*, 755 S.W.2d 363, 366 (Mo.App.E.D. 1988); *State v. Jacobs*, 704 S.W.2d 300, 302 (Mo.App.E.D.1986).

■ It is difficult to see how the State can make a case against defendant without the evidence obtained after the search warrant was read to defendant. Under *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), however, the Double Jeopardy Clause does not preclude retrial. When the trial court erroneously admitted evidence resulting in reversal, the State is not "precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency." *State v. Wood*, 596 S.W.2d 394, 398 (Mo. banc 1980). Under *Wood*, we are required to reverse and remand the case.

The judgment of the trial court is reversed and the cause remanded.

HAMILTON and SIMEONE, JJ., concur.

## APPENDIX A

### Affidavit

I, Thomas W. Hoffman, of lawful age and first being duly sworn, state that:

I am a Sergeant on the Missouri State Highway Patrol, with over 25 years of service on the Patrol and have been stationed in Audrain County for the last 10 years. Today, November 13, 1987 I was contacted at my home in Mexico, MO by an informant, who wishes to remain anonymous, and was told by the informant that there was going to be a drug party and drug meeting on the Mike Hammett farm south east of Farber tomorrow night, November 14, 1987, and that a large group of drug users would be coming to the farm to meet, buy, use and trade drugs, some from as far away as California, Ohio and other states, and that there is now on the farm an underground chamber or basement used for storage of drugs. The source of my informants information is from Mike Hammett's mother, who told another lady, who in turn told my informant's spouse. I have personally known my informant for approximately two years. My informant is between 50 and 60 years of age, and is a law abiding citizen, and I believe he is truthful and reliable. My informant first contacted James Barber, former Audrain County Sheriff from 1980 to 1984 with this information and was told by Barber to contact me. I then contacted former Audrain County Sheriff James Barber, who is from the Vandalia, Farber area and he told me he knows the informant personally, and that on at least two occasions in 1982 and 1983 the same informant had told him of places in the area where marijuana was growing, and as a result thereof Sheriff Barber confiscated 30 to 40 marijuana plants in the locations where the informant said the plants would be. Sheriff Barber said it was suspected the plants were being grown by one Leon Shaw who was a good friend of Mike Hammett and that he suspected both Hammett and Shaw of using and dealing in marijuana when he was Sheriff. I have checked the record on Mike Hammett and he was convicted in 1976 in Audrain County for sale of marijuana and sale of PCP to Ed Moses, an undercover trooper of the Missouri State Highway Patrol.

/s/ Thomas W. Hoffman
Affiant

Subscribed and sworn to before me this 13th day of November, 1987, at 5:39 p.m.

/s/ James E. Heim
Associate Circuit Judge of
Audrain County, Missouri

(SEAL)