STATE of Missouri, Appellant,

v.

Warren G. BYLER, III, Respondent.

No. 17326.

Missouri Court of Appeals,
Southern District,
Division One.

June 4, 1991.

ORDER

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Greene County, Springfield, for appellant.

Daniel W. Imhof, Springfield, for respondent.

CROW, Judge.

■ The State brings this interlocutory appeal per § 547.200, RSMo 1986, from an order suppressing evidence in a case where Warren G. Byler, III ("defendant") is charged with the class C felony of possessing cocaine, a controlled substance. § 195.202, RSMo Cum.Supp.1989. As no testimony was presented to the judge who entered the suppression order—The Honorable Don Bonacker—we glean the facts from the legal file and the parties' briefs.[1]

On March 5, 1990, Detective David Zuhlke of the Springfield Police Department presented a written application for a search warrant to The Honorable Don Burrell, a judge of the Circuit Court of Greene County. The application prayed for a warrant authorizing the search of:

> "2072 E. Bennett, Bldg. C, Apt. 15, Springfield, Greene County, Missouri. Apartment C–15 is located inside building C on the uppermost floor on the east side of the building. The door of Apt. C–15 faces south in the south breezeway of building C...."

The application sought authority to seize, among other things: cocaine, marijuana, and drug paraphernalia. Pertinent to the issues in this appeal, the application stated:

> "On 03–03–90, I was contacted by a concerned citizen who shall remain anonymous for their protection, however, this person did give me their name and telephone number, lending credence to the information they provided to me. This concerned citizen stated they have a very close friend who is a recovering drug addict. The recovering addict lives in the California Club Apartments at 2072 E. Bennett. In November, 1989, the recovering addict became acquainted with a person known only as 'Warren' who lives in Apt. C–15 inside the California Club Apartments at 2072 E. Bennett. Since that time, the recovering addict has been obtaining cocaine and marijuana from the person known only as 'Warren'. The citizen has been told on numerous occasions by this recovering addict that he/she obtains mostly cocaine and sometimes marijuana from 'Warren'. The citizen said they have seen the recovering addict go into 'Warren's' apartment, Apt. C–15 in the California Club Apartments, on numerous occasions over the last few months. The concerned citizen further states that there [are] a lot of people

---

1. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appeared in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *State v. Bowling*, 734 S.W.2d 565, 568[1] (Mo.App.1987); *Hammack v. White*, 464 S.W.2d 520, 522[4] (Mo. App.1971).

coming and going into Apt. C–15 everyday of the week, mostly during the evening. These people stay for only a few minutes.

Through contacts I have I have learned that the person residing in Apt. C–15 at the California Club Apartments at 2072 E. Bennett is a Warren G. Byler, III. Byler has been arrested by the Springfield Police Department for Burglary in the past and also has a previous arrest by the Independence, Kansas, Police Department for Auto Theft and Felony Property Destruction. The recovering addict admitted to the citizen that he/she often obtained cocaine from 'Warren' in Apt. C–15, the most recent time being within the last five days. The recovering addict obtained this cocaine immediately prior to his/her checking back into a drug rehabilitation program at a local hospital in order to detoxify himself/herself of cocaine. The concerned citizen also said they have smelled marijuana smoke on the clothes of the recovering addict in the past after he/she has exited Apt. C–15. This concerned citizen does not approve of illegal drug use, and that is why they have not been inside apartment C–15."

The application was verified by the oath of Detective Zuhlke.

Judge Burrell issued a search warrant for the premises and items specified in the application.

A search of the described premises was conducted March 9, 1990. The record contains a written return signed by a peace officer who participated in the search. Attached to the return is a receipt for property seized. The receipt lists, among other items:

"1) plastic bag containing 7 paper bindles,[2] each containing white powder—from black shaving kit, bedroom closet shelf.

2) black shaving kit which contained # 1, also containing paraphernalia[.]"

Defendant was charged with the crime noted in the first paragraph of this opinion. He filed a motion to suppress as evidence all items seized during the search, averring he "has standing to complain of said search."[3] The motion pled the search warrant "was issued without proper showing of probable cause" and defendant "did not freely, voluntarily and intelligently consent to a search."

In his order sustaining the motion, Judge Bonacker held:

"In this case, the Application and the Affidavit for the Search Warrant were in a single document signed by a Police Officer. The Policer [sic] Officer's Affidavit describes information related to him on a previous occasion by a person described as a 'concerned citizen'. The matters described by the Policer [sic] Officer in his Affidavit were not matters which the 'concerned citizen' observed or knew. It was merely information told to the 'concerned citizen' by a 'recovering addict' on some previous occasion.

The Affidavit does not contain any evidence of verification of any material aspect of the double-hearsay information.

Probable cause for the issuance of the Search Warrant under the Fourth Amendment, United States Constitution, must be determined within the four corners of the written Application and Affidavit. The Court is not allowed to consider information or facts which are not contained in the Application and Affidavit. The Application and Affidavit in this

---

2. One of the definitions of "bindle" in Webster's Third New International Dictionary (Merriam–Webster Inc., 1986) is: *"slang*: a small package, envelope, or paper containing a narcotic (as morphine, heroin, or cocaine)."

3. As reported earlier, neither side presented testimony to Judge Bonacker. Anyone interested in whether it was defendant's burden to show he was a person aggrieved by the seizure (see § 542.296.1 and .6, RSMo 1986) can study *State*

*v. Milliorn,* 794 S.W.2d 181 (Mo. banc 1990), where the majority opinion discusses the burden of going forward with evidence at a suppression hearing regarding a *warrantless* search. *Id.* at 184. The subject is also discussed in a *warrantless* search case decided by this Court, *State v. Tipton,* 796 S.W.2d 109 (Mo.App.1990), in the principal opinion, *id.* at 111–12, and the dissenting opinion, *id.* at 112.

case does not permit a finding of probable cause for the issuance of a Search Warrant."

Judge Bonacker's order suppressed all items listed in the inventory of property seized pursuant to the warrant.

The State's brief presents two points relied on; the first reads:

"The trial court erred in sustaining defendant's motion to suppress evidence seized ... pursuant to the search warrant ... because the application of Detective David Zuhkle [sic] was sufficient to sustain the finding of probable cause made by the issuing judicial officer."

The rules governing our review are set forth in *State v. Berry*, 801 S.W.2d 64 (Mo. banc 1990):

"The Fourth Amendment guarantees that 'no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' A firm definition of the phrase 'probable cause' has eluded the courts.... The most recent of the United States Supreme Court's major efforts to define 'probable cause,' *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), tells us that probable cause is 'a fair probability that contraband or evidence of a crime will be found.' ...

While the meaning of probable cause is a legal issue; its existence in a particular case is a question of fact. Thus, appellate review is not de novo. We give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous. [Citations omitted.]

... the neutral magistrate must determine probable cause from the totality of the circumstances. *Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The neutral magistrate must make a 'practical, commonsense decision whether ... there is a fair probability that contraband or evidence of a crime will be found.' *Id.* at 238, 103 S.Ct. at 2332.

That decision is made from all the circumstances set out in the affidavit, including the 'basis of knowledge' and 'veracity' of persons providing hearsay information. *Id. Berry*, 801 S.W.2d at 66.

■ It is clear from the above excerpt that we review *the initial judicial determination of probable cause made by Judge Burrell at the time he issued the search warrant,* and we override that determination only if it is clearly erroneous.

*Berry*, like the instant case, involved a search warrant for a residence. An anonymous caller informed a deputy sheriff the caller had seen four or five large freezer bags containing a green leafy substance the caller believed to be processed marijuana in the master bedroom of the suspects' mobile home the preceding day. The caller described the size, color, exterior features, and location of the mobile home, and also described a pickup parked there. The deputy drove by the residence, verifying the description supplied by the caller. The deputy prepared an affidavit reciting the above information. A judge issued a search warrant for the suspects' residence on the basis of the deputy's affidavit. During a search pursuant to the warrant, marijuana was found and the suspects were charged with possessing it. They filed motions to suppress, maintaining the deputy's affidavit did not supply sufficient probable cause to support issuance of the search warrant. *Id.* at 64–65.

The trial court ruled there was insufficient probable cause for the warrant. The State appealed. Reversing the trial court, the Supreme Court of Missouri noted the information supplied by the anonymous caller "bears the unmistakable marks of firsthand observation." *Id.* at 67. Furthermore, said the Court, the deputy verified the accuracy of the only information he was capable of confirming—the location, vehicle and exterior description. *Id.* The Court held this verification gave the deputy reasonable grounds to believe the remaining unverified information from the caller (that the suspects' residence contained marijuana) was likewise true. *Id.* Consequently, declared the Court, a neutral and

detached magistrate could have made a practical, commonsense decision that there existed a fair probability marijuana would be found in the suspects' residence and a search warrant should issue. *Id.*

We recognize, as emphasized by defendant, that the instant case differs from *Berry* in that here the "concerned citizen" had never been in apartment C–15. The citizen had purportedly been told by a "very close friend"—the addict—that since November, 1989, he [4] had obtained cocaine and marijuana on numerous occasions from "Warren" who resided in apartment C–15. The citizen did, however, have firsthand knowledge that the addict had entered apartment C–15 numerous times, as the citizen had witnessed this. The citizen had also witnessed numerous other people entering and leaving apartment C–15 every day, mostly during the evening. The visitors stayed only a few minutes. The citizen quoted the addict as saying he obtained cocaine from "Warren" in apartment C–15 within five days of the citizen's call to Detective Zuhlke. According to the citizen, the addict obtained the cocaine immediately before checking into a drug rehabilitation program at a local hospital for detoxification of cocaine. Additionally, the citizen told Zuhlke he had, in the past, personally smelled marijuana smoke on the addict's clothes after the latter exited apartment C–15.

While the citizen insisted on remaining anonymous for "protection," the citizen did give Zuhlke his name and telephone number.

Zuhlke verified as much of the information as he could. It is evident from the description of apartment C–15 in Zuhlke's affidavit that he personally observed it from the outside. Additionally, he developed from other sources that the "Warren" residing in apartment C–15 was Warren G. Byler, III. Zuhlke confirmed this was not a fictitious person, as police in Springfield and Independence, Kansas, had arrested him in the past.

Defendant says the instant case is governed by *State v. Hammett*, 784 S.W.2d 293 (Mo.App.1989). There, a peace officer received information from an informant the officer had known two years and considered reliable. The informant told the officer there was going to be a "drug meeting" the following night on the suspect's farm, and drugs were stored on the farm in an underground chamber or basement. The informant apparently obtained his information from his wife, who received her information from "another lady," who got her information from the suspect's mother. The officer prepared an affidavit reciting this information and presented it to a judge, who issued a search warrant. The ensuing search evidently resulted in seizure of controlled substances, as the suspect was convicted of drug crimes. The Eastern District of this Court reversed, holding the affidavit insufficient to demonstrate a fair probability that contraband would be found on the farm. The opinion indicated that had the informant conveyed firsthand observations of facts, the affidavit would have been sufficient, as the informant's veracity was sufficiently established. *Id.* at 296. However, said the Court, nothing in the affidavit established the veracity of the informant's wife, the other lady, or the suspect's mother. *Id.* Consequently, it was impossible for the issuing judge to determine the veracity of the latter three people. *Id.*

■ In *Berry*, the Supreme Court viewed *Hammett* "as standing for the proposition that uncorroborated fourthhand hearsay is not enough." *Berry*, 801 S.W.2d at 67. We readily agree.

■ Here, however, we have no *Hammett* scenario. The concerned citizen had, on numerous occasions, personally witnessed the addict, a "very close friend," enter apartment C–15 where "Warren" lived. The citizen had also witnessed numerous other people entering and leaving apartment C–15 every day, mostly during the evening. The visitors stayed only a few minutes. Evidently, the citizen also

---

**4.** Henceforth, our use of masculine pronouns is for convenience only. Nothing in the record indicates the gender of the "concerned citizen" or the "recovering drug addict."

**682**

had firsthand knowledge that the addict had checked into a hospital within the preceding five days for detoxification of cocaine, indicating the addict had obtained cocaine from some source. Furthermore, the citizen had, in the past, personally smelled marijuana smoke on the addict's clothes after the latter exited apartment C–15.

The citizen revealed his identity and phone number to Detective Zuhlke, hence Zuhlke was not acting on a tip from an unidentified source. The citizen's desire that his *identity* remain undisclosed for "protection" suggests he feared retaliation if it became known he reported the drug activity.

We noted earlier that Zuhlke verified, apparently by personal observation, the location of apartment C–15. Zuhlke also established that "Warren," who resided in C–15, was Warren G. Byler, III, an actual person with an arrest record at two different police departments.

It is true, of course, that the citizen did not personally witness any drugs in apartment C–15, nor did he ever see defendant supply drugs to anyone. The only source of that information was the addict. Consequently, that information was secondhand hearsay. Had Zuhlke's affidavit contained only the information supplied by the addict through the citizen, this case would present circumstances analogous to *Hammett.*

Here, however, Zuhlke's affidavit included firsthand information from the citizen, together with information developed independently by Zuhlke from other sources, including police records. We must decide whether a neutral magistrate could make a practical, commonsense determination from the totality of the circumstances set forth in Zuhlke's affidavit that there was a fair probability contraband would be found in apartment C–15. *Berry,* 801 S.W.2d at 66. In doing so, we must give great deference to the initial judicial determination of probable cause made at the time of the issuance of the search warrant, and we cannot disturb that determination unless it is clearly erroneous. *Id.* at 66[3].

Applying the above rules, we cannot declare Judge Burrell's determination of probable cause clearly erroneous. The information supplied by the addict to the citizen was buttressed by the firsthand observations of the citizen (enumerated earlier) and by the information developed independently by Zuhlke. We cannot say a neutral magistrate would be clearly erroneous in determining, from the totality of the circumstances recounted in Zuhlke's affidavit, that there was a fair probability contraband would be found in apartment C–15.

Accordingly, we hold the State's first point is meritorious and requires reversal of the order suppressing the evidence seized under authority of the search warrant. Having decided that, we need not consider the State's second point.

The order sustaining defendant's motion to suppress evidence is reversed, and the case is remanded to the trial court for further proceedings.

MAUS, P.J., and PREWITT, J., concur.