**STATE of Missouri, Appellant,**

v.

**Robert W. FORD, Respondent.**

**No. ED 77451.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 16, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2000.

**32**

H. Morley Swingle, Pros. Atty., Jackson, for appellant.

Kenton M. Hall, Jackson, for respondent.

ROBERT E. CRIST, Senior Judge.

This is an interlocutory appeal by the State of Missouri pursuant to section 547.200.1(3), RSMo Cum.Supp.1999, from the trial court's order sustaining Defendant Robert Ford's motion to suppress evidence seized pursuant to a search warrant. We reverse and remand.

On October 8, 1998, a prosecuting attorney from Cape Girardeau County applied for a search warrant to search the premises of Robert W. Ford (Defendant) and Beverly Ford at 485 Chillicothe Lane, Jackson, Missouri. The application asserted that the State had reason to believe that methamphetamine, drug paraphernalia, and items used in the manufacture of methamphetamine would be located on the premises.

Attached to the application for the search warrant was the affidavit of William J. Bohnert, an officer with the Cape Girardeau Police Department. In pertinent part, the affidavit averred as follows:

3. Within the past two weeks, I was contacted by a confidential informant, herein referred to as "CI." CI has proven to be a reliable informant in the past concerning narcotics investigations; CI has provided me with information which has lead to multiple arrests. CI told me that within the past thirty days, CI was in the residence of Shantel Cline, Brookwood Trailer Court, Lot 183, Oriole, Missouri. CI was informed by Shantel Cline that methamphetamine could be purchased from "Bob" and "Bev." Shantel Cline stated that she would take CI's money, while CI waited at Shantel Cline's residence, drive to "Bob" and "Bev's" residence, purchase the methamphetamine, and then return to the CI.

4. On September 10, 1998, I met CI at a predetermined meeting place. I searched CI to ensure that CI did not have any money or other contraband in CI's possession. At this time I gave CI a quantity of United States currency to purchase methamphetamine. CI then drove to Shantel Cline's residence, I maintained constant observation of CI from the time CI left the predetermined meeting place to the time CI went to Shantel Cline's residence. A short time after CI went into Shantel Cline's residence, Shantel Cline left her residence; got into CI's vehicle and drove directly to 485 Chillicothe Lane, Jackson, Missouri. I was in constant view of Shantel Cline the entire way. She then went into the trailer at 485 Chillicothe Lane. Sometime later, Shantel Cline came out of the trailer, got back into CI's vehicle and returned to her residence. CI informed me that upon her return, Shantel Cline informed CI that she was unable to purchase methamphetamine because they were having trouble with the "cooking" process.

5. On September 24, 1998, I met CI at a predetermined meeting place. Once again, I searched CI to ensure that CI did not have any money or other contraband in CI's possession. I gave CI a quantity of United States Currency to purchase methamphetamine. CI then departed for Shantel Cline's residence. I was in constant observation of CI from time CI left the predetermined meeting place to the time CI went to Shantel Cline's residence. A short time after CI went into Shantel Cline's residence, Shantel Cline left her residence; got into CI's vehicle and drove directly to 485 Chillicothe Lane, Jackson, Missouri. I was in constant view of Shantel Cline the entire way. She then went into the trailer at 485 Chillicothe Lane. Sometime later, Shantel Cline came out of the trailer, got back into CI's vehicle and returned to her residence. CI left the trailer and I met CI at a predetermined

location, at which time CI gave me a small plastic bag containing methamphetamine. The CI then informed me that Shantel Cline had given her the methamphetamine.

6. On September 28, 1998, I met CI at a predetermined meeting place. Once again, I searched CI to ensure that CI did not have any money or other contraband in CI's possession and I gave CI a quantity of United States Currency to purchase methamphetamine. I was in constant observation of CI from the time we left the predetermined meeting place to the time we went to Shantel Cline's residence. On this occasion when the CI went to the Shantel Cline's residence, Shantel Cline called "Bob" and "Bev" to make arrangements to pick up methamphetamine. "Bob" and "Bev" advised that they thought their house was under surveillance by police and that Shantel Cline should not come.

7. On October 6, 1998, I met CI at a predetermined meeting place. Once again, I searched CI to ensure that CI did not have any money or other contraband in CI's possession and gave CI a quantity of United States Currency to purchase methamphetamine. I was in constant observation of CI from the time we left the predetermined meeting place to the time we went to Shantel Cline's residence. Sometime later, CI returned to her car and I met her at the predetermined meeting place. CI told me that when CI went to Shantel Cline's residence, Shantel Cline contacted "Bob" and "Bev" who informed Shantel Cline that they did not have any methamphetamine at that time, but they would be making more methamphetamine in a couple of days.

8. I met CI at a predetermined location on October 8, 1998. I searched CI to ensure that CI did not have any money or other contraband in CI's possession and gave CI a quantity of United States Currency to purchase metham-

phetamine. I was in constant observation of CI from the time we left the predetermined meeting place to the time we went to Shantel Cline's residence. The CI, Shantel Cline, and Shantel Cline's son all got into the CI's vehicle and drove to a Citgo station located on Missouri Highway 177, Cape Girardeau. The CI and Cline's son got out of the car at the Citgo and went inside, while Shantel Cline drove to "Bob" and "Bev's" trailer. I was in constant view of Shantel Cline the entire way. She then went into the trailer at 485 Chillicothe Lane, Jackson, Missouri. Sometime later, Shantel Cline came out of the trailer, got back into CI's vehicle and returned to the Citgo station on Highway 177 to retrieve the CI and Shantel Cline's son. They then returned to Shantel Cline's residence. CI left the trailer and I met CI at a predetermined location. CI stated Shantel Cline told CI that "Bob" and "Bev" were trying to dry the methamphetamine with fans and air conditioners. The CI then informed me that Shantel Cline said the methamphetamine should be dry around 5:00 p.m. today, October 8, 1998.

9. I contacted Citizen's Electric Corporation concerning utility records of 485 Chillicothe Lane, Jackson, Missouri. I was informed that utilities for that address have been listed under the name of Robert W. Ford since February, 1995.

After reviewing the application and the affidavit, Circuit Court Judge Gary A. Kamp issued a search warrant for Defendant's home at 485 Chillicothe Lane, finding there was probable cause to issue the warrant. Pursuant to the warrant, police searched the home and found drug paraphernalia, marijuana, and methamphetamine. The State charged Defendant by information with possession of methamphetamine, section 195.202, RSMo, misdemeanor possession of marijuana, section 195.202, possession of drug paraphernalia, section 195.233, and two counts of endan-

gering the welfare of a minor, section 568.045.

Defendant filed a motion to suppress the evidence seized at his home contending the warrant failed to state adequate facts to establish probable cause to search the premises. The trial court sustained Defendant's motion and suppressed the evidence. The State files this interlocutory appeal under section 547.200.1(3).

In its appeal, the State argues the trial court erred in sustaining the motion to suppress because under the totality of the circumstances, the affidavit presented sufficient facts to establish probable cause to issue the warrant. In response, Defendant contends the affidavit failed to state sufficient facts to show probable cause because it was based on multiple levels of hearsay without a showing of the reliability of each declarant.

■ The Fourth Amendment guarantees no warrants shall issue but upon probable cause. The United States Supreme Court has held that in determining if there is probable cause to issue a search warrant, the issuing judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In making this assessment, the court should look to the totality of the circumstances surrounding the events. *Id.* at 231, 103 S.Ct. at 2328.

■ An informant's veracity, reliability and basis of knowledge, while relevant to determining probable cause, are not "separate and independent requirements to be rigidly exacted in every case.... They should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable

cause'...." *Id.* at 230, 103 S.Ct. at 2328. Under the totality of the circumstances test, a deficiency in one area can be compensated for by a strong showing of another or by "some other indicia of reliability." *Id.* at 233, 103 S.Ct. at 2329.

■ The duty of a reviewing court is only to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. *Id.* at 238, 103 S.Ct. at 2332. Accordingly, we give great deference to the issuing judge's determination of probable cause. *State v. Laws,* 801 S.W.2d 68, 70 (Mo. banc 1990). Our review is not de novo and we will reverse only upon a showing of clear error in the issuing judge's determination. *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990).

■ Defendant contends there are multiple levels of hearsay contained in the affidavit where Officer Bohnert relates what the confidential informant told him about what Shantel Cline told her. Defendant relies upon *State v. Hammett,* 784 S.W.2d 293 (Mo.App. E.D.1989), to support his argument that the affidavit was unreliable because there was no showing of the veracity of Shantel Cline. In *Hammett,* a police officer received information from a reliable informant that a drug meeting was going to occur on the defendant's farm. The informant obtained this information from his wife, who received this information from "another lady", who got her information from the defendant's mother. Using this information from an affidavit, a judge issued a search warrant for defendant's farm. This Court reversed, finding the affidavit was insufficient to show probable cause because the veracity of the informant's wife, the other lady and the defendant's mother had not been established. *Id.* at 296. In *Berry,* the Missouri Supreme Court stated that *Hammett* "is best viewed as standing for the proposition that uncorroborated fourth-hand hearsay is not enough." *Berry,* 801 S.W.2d at 67; *See also, State v. Byler,* 810 S.W.2d 677, 681 (Mo.App. S.D.1991).

■ After reviewing the affidavit, we find the issuing judge had a substantial basis for concluding probable cause existed to issue the warrant. Here, we do not have uncorroborated fourth-hand hearsay as in *Hammett.* Although Shantel Cline's veracity was never established, her actions, as observed by the police, corroborated what the confidential informant told Officer Bohnert happened. Hearsay can be a proper basis to establish probable cause if there is a substantial basis for crediting the hearsay. *Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2334; *State v. Dudley,* 819 S.W.2d 51, 54 (Mo.App. S.D.1991). Corroboration can occur by independent police work, such as observations of the police themselves. *Gates,* 462 U.S. at 241–42, 103 S.Ct. at 2334; *State v. Williams,* 9 S.W.3d 3, 14 (Mo.App. W.D.1999). When the confidential informant approached Cline to buy methamphetamine, Cline did not immediately hand over methamphetamine. Instead, the police watched her leave the meeting site, travel directly to the Defendant's residence, travel back to the confidential informant, and only then give the informant methamphetamine. Common sense is a key ingredient in considering the absence or presence of probable cause. *See, State v. Hampton,* 959 S.W.2d 444, 451 (Mo. banc 1997). Based on common sense, Cline's actions alone indicated to the police that the Defendant's house contained methamphetamine.

The case at hand is similar to one recently decided by the Western District in *Williams,* 9 S.W.3d at 3. In *Williams,* the police received an anonymous CrimeStoppers tip that the defendant was selling cocaine from his apartment, he just received a large shipment of cocaine, drove an older-model green Pontiac, and lived with his girlfriend "Kay." *Id.* at 7. The police investigated the tip, learning the apartment was registered to a Kaylicia Vanee Patrick and observed a green Pontiac parked at the apartment. *Id.* The officer also learned that the defendant had been previously arrested for selling co-

caine from the same apartment and possession of cocaine. *Id.* Based on this information, the court found probable cause to issue and issued a search warrant for the apartment. *Id.* at 8.

On appeal, the defendant claimed the officer's affidavit was deficient because it was based on hearsay (the CrimeStoppers anonymous tip), which was uncorroborated or provided by a reliable informant. *Id.* at 14. The Western District found the hearsay statements in the anonymous tip had been corroborated by independent police observations, which created a substantial basis for crediting the hearsay contained in the affidavit. *Id.* at 16. Here, as in *Williams,* independent police observations corroborated the information provided by Shantel Cline.

In addition, Defendant does not contend that the information provided by the confidential informant was unreliable. In addition, the affidavit shows the informant had been reliable in the past and her information had led to multiple arrests. The informant also testified at the motion to suppress hearing that she had assisted on 142 cases and only one person had not been convicted. The reliability of the informant, therefore, is undisputed. Consequently, the statements of the reliable informant, along with the personal observations of the police, were sufficient to show a fair probability that contraband or evidence of a crime would be found at Defendant's residence. *Cf. United States v. Satterwhite,* 980 F.2d 317, 321–22 (5th Cir.1992) (personal observations of police and confidential informant provided corroboration); *State v. Mejia,* 111 Wash.2d 892, 766 P.2d 454, 457–58 (1989) (third person's conduct as middleman in drug transaction established probable cause); and *State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047, 1053 (1980) (personal knowledge of police from surveillance provided probable cause). The trial court erred in granting the motion to suppress and we grant the State's first point on appeal.

As a result, we do not address the State's second point.

The order granting the motion to suppress is reversed, and the case is remanded for further proceedings.

WILLIAM H. CRANDALL, P.J. and MARY K. HOFF, J., Concur.