Alok Ahuja, Chief Judge
Respondent Lloyd Fowler was charged with possession of a controlled substance following the execution of a search warrant at his Kansas City residence. Fowler filed a motion to suppress the evidence derived from the search, arguing that the information in the warrant application was insufficient to establish probable cause to believe that evidence of criminal activity would be discovered during a search. The circuit court granted Fowler’s motion to suppress, and the State filed this interlocutory appeal pursuant t'o § 547.200.1, RSMo. We reverse.
Factual Background
On July 30, 2009, Detective Eric Benson of the Kansas City Missouri Police Department applied for a search warrant for Fowler’s residence. The relevant portion of the warrant application states:
On 07-28-2009, at approximately 1710 hours, a detective with the Kansas City Missouri Police Department, Street Crimes Unit and a confidential infor *355 mant responded to a residence at 1228A E. 4th Street, Kansas City, Jackson County, Missouri regarding an on-going narcotics investigation. The confidential informant knew a male, previously identified as Mr. Lloyd E. Fowler, Black/ Male, 10-21-1965, lived in the building and sold purported Cocaine Base from his apartment. Mr. Fowler will now be referred to as the suspect.
Prior to arrival, the confidential informant contacted the suspect by phone. The confidential informant arranged to meet the suspect at his residence in order to purchase fifty dollars worth of Cocaine Base.
Upon arrival, the detective parked directly in front of the multi-unit structure and handed the confidential informant fifty dollars of pre-recorded Street Crimes Unit buy money. The confiden-. tial informant exited the detective’s undercover vehicle and met with the suspect in front of the apartment building. The informant followed the suspect into the building through the center common door located on the south side of the structure, the confidential informant ascended the stairs to the second floor, then both the confidential informant and suspect entered the west facing door on the east side of the building. Once inside, the confidential informant handed the suspect fifty dollars of pre-recorded Street Crimes Unit buy money. The suspect accepted the buy money and retrieved several individually packaged beige rock-like substances, purported to be Cocaine Base, from above the interior door frame to the apartment’s balcony. The suspect handed the confidential informant two of the individually packaged substances in exchange for the buy money. While inside the apartment, the suspect displayed a .22 cal. handgun to the informant. After a brief conversation, the confidential informant left the apartment building and returned to the detective’s undercover vehicle. The confidential informant immediately handed the detective the purchased substances before they drove from the area.
The confidential informant, who has been proven reliable, was searched prior to and after the narcotics transaction for weapons, narcotics, and currency with negative results. During the narcotics investigation the confidential informant was kept under constant surveillance and electronically monitored.
The detective field-tested the purported Cocaine Base, which weighed approximately 0.7 grams, utilizing the Scott Reagent System test kit. The substance tested positive to the presence of Cocaine. The purchased substance was packaged, sealed, signed, dated and placed in the unit safe to be forwarded to the Regional Crime Lab for further analysis.
The warrant application requested authorization for a “no-knoek” entry, based on Fowler’s criminal history, the fact that drug dealers are commonly armed, and the ease of disposing of illegal drugs.
Although the search warrant application was attested by Detective Benson, he acknowledged during a deposition that he was acting merely as an “Administrative Detective” responsible for submitting the warrant application, but that he had no direct involvement in the underlying narcotics investigation, and no personal knowledge of the information stated in the warrant application. Instead, the information contained within the warrant application was provided to Detective Benson by the detective who actually conducted the investigation.
The search warrant was issued by an associate circuit court judge on July 30, and was executed at Fowler’s residence on *356 August 5, 2009. During the execution of the search warrant, police found approximately 0.8 grams of purported cocaine base.
Fowler was charged with one count of possession of a controlled substance, a Class C felony. He filed a motion to suppress the evidence found during the execution of the search warrant. The motion argued that the warrant application was based upon multiple levels of hearsay information, but that the application provided the warrant-issuing judge with no basis to determine whether that hearsay was reliable. Fowler also argued that the warrant application was so lacking in indicia of probable cause that no reasonable law enforcement officer could have relied on the resulting warrant in good faith. The circuit court conducted a suppression hearing at which the search warrant application and a deposition of Detective Benson were admitted into evidence. Following the hearing, the circuit court granted Fowler’s motion to suppress, finding that the warrant application was insufficient to establish probable cause and that the good-faith exception to the exclusionary rule was inapplicable under the circumstances. The State then filed this interlocutory appeal.
Analysis
“The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation.” State v. Henry, 292 S.W.3d 358, 363 (Mo.App.W.D.2009) (quoting State v. Neher, 213 S.W.3d 44, 48-49 (Mo. banc 2007)).[1]
A reviewing court should “give great deference to the initial judicial determination of probable cause that was made at the time the warrant issued.” State v. Brown, 382 S.W.3d 147, 156 (Mo.App.W.D. 2012) (quoting Neher, 213 S.W.3d at 49) (internal quotation marks omitted).
In determining whether probable cause exists, the issuing magistrate or judge must “make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.”
Brown, 382 S.W.3d at 161 (quoting Neher, 213 S.W.3d at 49); see also Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The decision of the issuing judge will be upheld unless that decision is clearly erroneous. Brown, 382 S.W.3d at 156; Neher, 213 S.W.3d at 49. “ ‘Even when the sufficiency of an affidavit is marginal, our determination should be informed by the preference accorded to warrants.’ ” State v. Wilbers, 347 S.W.3d 552, 557 (Mo.App.W.D.2011) (quoting State v. Trenter, 85 S.W.3d 662, 667 (Mo.App.W.D.2002)).
Despite the deference we afford to an issuing judge’s decision to issue a search warrant, “[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law ... which this court reviews de novo” State v. Ramires, 152 S.W.3d 385, 391 (Mo.App.W.D. 2004).
Fowler’s primary contention is that the affidavit supporting the search warrant is insufficient to support a finding of probable cause because it contains multiple levels of hearsay, each of which lacks the necessary indicia of reliability. Thus, Fowler emphasizes that Detective Benson, who signed the affidavit, had no first-hand *357 knowledge of the events described. Instead, another (unidentified) detective provided Detective Benson with the underlying information, which Detective Benson merely relayed to the warrant-issuing judge. Fowler also notes that the undercover detective, in turn, relied on information supplied by a confidential informant; the information supplied by the confidential informant presumably includes many, if not all, of the details concerning the manner in which the controlled drug purchase was conducted, and of Fowler’s behavior inside the apartment building. Thus, as Fowler points out, there are two levels of hearsay at issue here.
“An affidavit of a police officer relying on a statement made by someone else may be sufficient to support a finding of probable cause if there is a ‘substantial basis’ for crediting the statement of the informant.” Henry, 292 S.W.3d at 365 (quoting Neher, 213 S.W.3d at 49). Although Detective Benson’s warrant application contained multiple levels of hearsay, the warrant-issuing judge did not clearly err in concluding that there was a substantial basis in the affidavit for crediting those hearsay statements.
First, the warrant-issuing judge was justified in treating the information supplied to Detective Benson by the case detective as reliable. As the Missouri Supreme Court has noted, “ ‘courts have consistently held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination.’ ” State v. Baker, 103 S.W.3d 711, 720-21 (Mo. banc 2003) (quoting State v. Williams, 9 S.W.3d 3, 16 (Mo.App.W.D.1999) (in turn quoting State v. Dudley, 819 S.W.2d 51, 54-55 (Mo.App.S.D.1991))). Fowler argues that this principle (that statements from one law enforcement officer to another are deemed reliable) is only applicable where the law enforcement officers are jointly engaged in a common investigation. Baker does not suggest, however, that officer-to-officer communications can only be considered reliable where both officers are actively involved in a common investigation. Indeed, from a review of the Baker opinion, it is unclear what role the officer who applied for the warrant in that case (Sergeant James Wingo) had in the investigation of methamphetamine manufacturing, prior to the search warrant being issued. 103 S.W.3d at 714-15.
Fowler also emphasizes that the case detective was not identified by name in Detective Benson’s affidavit. But, whether or not the case detective was identified, “the context of [the affidavit] indicates the information ... came from some police source, either police records or another police officer.” Dudley, 819 S.W.2d at 55. This is enough to deem the information reliable, even if the officer supplying the information is not identified. Id.[2]
The issuing judge was also justified in crediting the information supplied by the confidential informant. It is unnecessary for a search warrant application to demonstrate that a confidential informant *358 is generally reliable (based for example on the police’s prior dealings with the informant). Instead, “ ‘[i]f the hearsay can be properly credited, there is no need to show the informant was reliable.’ ” State v. Dowell, 25 S.W.3d 594, 607 (Mo.App.W.D. 2000) (quoting Williams, 9 S.W.3d at 14). In assessing the reliability of information supplied by a confidential informant, an issuing judge can consider whether the informant “learned the information through personal observation,” and “whether the informant’s statements were corroborated through other sources or whether there is some other reason to believe that the informant can reasonably be relied upon.” Henry, 292 S.W.3d at 365. Where an informant’s information is detailed, it “bears the unmistakable marks of firsthand observation.” State v. Berry, 801 S.W.2d 64, 67 (Mo. banc 1990). And “ ‘[w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime ... the information carries with it indicia of reliability and is generally presumed to be reliable.’” Baker, 103 S.W.3d at 720 (quoting State v. Dawson, 985 S.W.2d 941, 950 (Mo.App.W.D.1999)).
In addition, “[c]orroboration from ... independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit,” even without a showing that the hearsay declarant is generally reliable. Dowell, 25 S.W.3d at 607 (quoting Dawson, 985 S.W.2d at 950); see also Williams, 9 S.W.3d at 14. Performance of a controlled drug purchase at a particular location corroborates a confidential informant’s statements that a defendant is manufacturing .or selling drugs from that location. State v. Moiser, 738 S.W.2d 549, 557 (Mo.App.E.D.1987); United States v. Pennington, 287 F.3d 739, 742-43 (8th Cir.2002).
In this case, the confidential informant’s report that Fowler had “sold purported Cocaine Base from his apartment” was corroborated by the confidential informant’s controlled drug purchase from Fowler, at that address. The confidential informant’s detailed statements concerning what the informant observed inside Fowler’s apartment during the controlled drug purchase — where Fowler stored his drugs, and his possession of a firearm — “bear[ ] the unmistakable marks of firsthand observation,” and are entitled to some measure of credibility for that reason. See State v. Taylor, 373 S.W.3d 513, 523 (Mo.App.E.D.2012) (“The issuing court could credit the hearsay in the affidavit because the confidential informant personally observed Defendant with drugs and firearms inside the residence.”). In addition, those observations are corroborated, in substantial part, by the fact that a law enforcement officer personally observed that the confidential informant was able to arrange, and execute, a purchase of crack cocaine from Fowler.[3]
Fowler argues that suppression was required under State v. Hammett, 784 S.W.2d 293 (Mo.App.E.D.1989). In Ham *359 mett, a confidential informant related information to a law enforcement officer that a meeting to consume and distribute drugs was about to take place at the defendant’s farm. Id. at 294, 298. The affidavit indicated that the confidential informant obtained his information from his wife, who in turn got the information from “another lady,” who allegedly got the information from the mother of the defendant. Id. “Nothing in the affidavit disclose[d] the means or method by which, or the time when, the information passed from one person to another.” Id. at 294. While the affidavit recounted that the confidential informant had provided reliable information on past occasions, “[n]othing in the affidavit ... indicated anything about the credibility or reliability of the informant’s wife, ‘another lady,’ or defendant’s mother.” Id. Hammett concluded that the affidavit failed to establish probable cause to justify issuance of a search warrant, and that it was unreasonable for officers to rely on the warrant. Id. at 296-97.
Hammett is wholly unlike this case. Hammett concerned fourth-hand hearsay, with no information provided concerning the reliability of three of the four hearsay declarants. Here, by contrast, the affidavit relates information observed by a law enforcement officer, and information from a confidential informant that the officer’s observations were able to corroborate in large measure. Hammett does not require suppression of evidence in this very different case.
The concurring opinion contends that Detective Benson’s affidavit “is stated as though he had first-hand knowledge of the facts asserted therein,” Concurring Op. at 861, and fails to disclose the multiple levels of hearsay contained in the affidavit. Similarly, Fowler argues that the warrant application fails to distinguish between the information derived from the case detective’s personal observations, and the information derived solely from the confidential informant. Courts have long recognized, however, that police officers drafting search warrant applications are not trained legal experts, and are not held to the same standards as lawyers. Thus, the Supreme Court of the United States has
recognized that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area. Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of “probable cause.”
Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citations and internal quotation marks omitted). “[A] reviewing court should not quash a warrant by construing it in a hypertechnical, rather than a commonsense, manner.” Neher, 213 S.W.3d at 49.
Detective Benson’s affidavit makes sufficiently clear that the underlying information in the affidavit comes from another officer. The affidavit refers at the outset to “a detective with the Kansas City Missouri Police Department, Street Crimes Unit,” and refers to that officer repeatedly as “the detective,” in the third person. Nothing in the affidavit suggests that Detective Benson was personally involved in the narcotics investigation or the controlled drug buy. Indeed, Fowler himself argues that “the face of the warrant application” reflects that “Detective Benson had no personal knowledge of any of the information he swore to in the affidavit.” Resp. Br. at 8. The affidavit does not misrepresent or conceal the fact that De *360 tective Benson’s information was derived from a fellow officer.
In addition, even if it is not stated explicitly, the affidavit makes reasonably clear that the case detective witnessed what occurred outside Fowler’s apartment building, but that the information as to what occurred inside Fowler’s apartment building, and inside Fowler’s apartment, comes from the confidential informant alone. See Neker, 213 S.W.3d at 49-50 (rejecting defendant’s argument that search warrant application was deficient because it “did not expressly state the informant’s information was based on personal observation”; instead concluding that “the issuing judge could infer that the confidential informant ... had personally observed the information reported to the sheriff’).[4]
In any event, any confusion as to whether the case detective personally observed events inside the apartment building would not undercut the probable cause determination. As we have explained above, the information concerning what occurred inside the apartment building bears sufficient indicia of reliability, even assuming that information came solely from the confidential informant’s observations. The reliability of that information is enhanced, not reduced, if the case detective also observed some or all of what occurred inside the building.
In this case, the warrant application reflected that a confidential informant had informed a Street Crimes Unit detective that Fowler was selling crack cocaine from his apartment. The application recounted the details of a controlled drug purchase from Fowler at his apartment, including: that the case detective witnessed the confidential informant contact Fowler and arrange a meeting at Fowler’s apartment building; that the informant was searched prior to meeting with Fowler; that the detective witnessed the confidential informant meet and enter the apartment building with Fowler; and that the informant handed the detective a substance testing positive for cocaine immediately after the informant left Fowler’s apartment. Further, the application described the specific place in the apartment in which Fowler stored his drugs, and stated that Fowler had more drugs and a firearm in the apartment. The warrant application also related that Fowler had prior narcotics convictions.
We recognize that Detective Benson’s affidavit fails to name the undercover detective, fails to provide information establishing the confidential informant’s reliability unrelated to the controlled drug purchase, and fails to clearly state the source of particular information in the affidavit. We share the concurrence’s concerns with the vagueness of the affidavit, and its admonition that law enforcement officers should present more detailed information in future warrant applications. Nevertheless, while the affidavit may be poorly drafted, the deficiencies do not render it legally insufficient under the deferential standard of review applicable to a search conducted pursuant to a warrant. The affidavit contains recent, specific information, corroborated in large measure by the case detective’s personal observations, indicating that drugs were then present in Fowler’s apartment, and that Fowler was actively dealing in drugs from the apartment. This was sufficient to justify issuance of a search, warrant.
*361 Conclusion
The circuit court’s suppression ruling is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.
Judge Welsh concurs.
Judge Ellis concurs in separate opinion filed.

. The 'search and seizure” provision in Article I, Section 15 of the Missouri Constitution "is interpreted consistently with the Fourth Amendment of the U.S. Constitution.” State v. Wilbers, 347 S.W.3d 552, 556 n.3 (Mo.App.W.D.2011).

. Fowler also argues that the case detective's information is unreliable, because Detective Benson’s affidavit does not specify the "unidentified case-file detectivef's] ... role in the investigation prior to the controlled drug buy.” Respondent’s Br. at 10. We fail to see the significance of this observation. Whether or not the case detective had any prior role in investigating Fowler, the affidavit makes clear that the officer (1) received a report from a confidential informant that Fowler was dealing crack cocaine from his apartment; and (2) corroborated the confidential informant's tip by supervising a controlled drug purchase from Fowler at that address.

. We do not rely on the conclusory statement in Detective Benson’s affidavit that the’confidential information "has been proven reliable.” It appears that the statement that the • informant "has been proven reliable" is based solely on the informant's arrangement of the controlled drug purchase from Fowler. If so, the statement adds nothing to the affidavit’s description of the controlled drug purchase itself; the issuing judge was fully capable of assessing the reliability of the informant's information in light of the controlled drug purchase. To the extent the statement that the informant "has been proven reliable” was intended to refer to something else, the affidavit fails to refer, even generally, to any other indicia of reliability on which the issuing judge could rely. See State v. Robinson, 454 S.W.3d 428, 439-40 (Mo.App.W.D.2015).

. Because the face of the affidavit adequately reflects the source of the reported information, we do not believe this case is properly analyzed under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We note that Fowler has not cited or relied on Franks, either in the trial court or on appeal.